**Dawna M. GROVER, Petitioner,**

v.

**INDUSTRIAL COMMISSION OF COLORADO, Department of Labor and Employment, Pac 'N Save Warehouse Foods, Inc., and Commercial Union Insurance Company, Respondents.**

No. 87SC188.

Supreme Court of Colorado, En Banc.

July 11, 1988.

Rehearing Denied Aug. 15, 1988.

Dawes and Crane, P.C., Robert C. Dawes, Durango, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert C. Lehnert, Asst. Atty. Gen., Denver, for respondent Industrial Com'n of Colorado.

James R. Clifton & Associates, P.C., Diane Murley, Denver, for respondents Pac 'N Save Warehouse Foods, Inc., and Commercial Union Ins. Co.

Gerald P. McDermott, Paul W. Conaway, Denver, for amicus curiae Colorado Trial Lawyers Ass'n.

QUINN, Chief Justice.

We granted certiorari to review the court of appeals' decision in *Grover v. Industrial Comm'n*, 739 P.2d 900 (Colo.App.1987), which held that the Industrial Commission (commission), which was replaced in 1986 by the Industrial Claim Appeals Office,[1] lacked the authority to order, as part of a final award of permanent partial disability in a worker's compensation proceeding, the payment of medical expenses for any medical treatment which the claimant might need subsequent to the date of the final award, and also that the commission had no authority to order an employer to pay the cost of a claimant's child care expenses as part of the claimant's vocational rehabilitation. We conclude that the court of appeals erred in holding that the commission lacked the authority to order the employer to pay for any future medical treatment which the claimant might need to alleviate the effects of the disability and that the court of appeals also erred in holding that the commission had no authority to order the employer to pay the claimant's child care expenses as a service related to the claimant's vocational rehabilitation program. We accordingly reverse the judgment of the court of appeals and remand the case to that court with directions to return the case to the Industrial Claim Appeals Office for further proceedings.

I.

On November 29, 1983, the claimant, Dawna Grover, while working as a meat wrapper at Pac 'N Save Warehouse Foods, Inc., suffered an injury to her neck and shoulders when lifting a box of frozen chicken. Grover was thirty-three years old on the date of the injury and was a single parent of two minor children. Pac 'N Save and its insurance carrier, Commercial Union Insurance Company (collectively referred to as the respondents), admitted liability for the injury and provided medical

---

1. Ch. 64, sec. 3, § 8-1-102, 1986 Colo.Sess.Laws 463, 463-64.

care and temporary disability benefits to Grover. Because the injury prevented Grover from returning to her former employment as a meat wrapper, the respondents also provided her with vocational rehabilitation services consisting of on-the-job training as a floral designer. During the period of vocational rehabilitation, Grover received weekly rehabilitation maintenance payments equal to two-thirds of her former weekly salary at Pac 'N Save. Grover's vocational rehabilitation counselor recommended that the respondents pay Grover's child care expenses for her two children during her participation in the rehabilitation program. The respondents refused to pay for these expenses, however, so Grover paid for them out of her rehabilitation maintenance benefits with additional assistance from the La Plata County Department of Social Services. Grover successfully completed the rehabilitation program and subsequently obtained full-time employment as a floral designer.

Grover then requested a hearing on the issues of permanent disability and the respondents' responsibility for the payment of child care expenses during her vocational rehabilitation. At a hearing conducted on November 21, 1985, Grover testified that she still had difficulty holding her arms in the air and reaching above a certain height, and that she could not stand for extended periods of time without experiencing pain. She also stated that she took a muscle relaxer, underwent occasional physical therapy, and saw a doctor every two months.

The reports of six physicians who had previously examined Grover during the course of her medical treatment were admitted into evidence and made a part of the record. These reports indicated that Grover still had occasional pain in her back muscles and that her condition was not likely to improve. One of the doctors reported that Grover was at risk of reinjury and that her pain could possibly increase in the future. Another report stated that further medical treatment might be warranted in the event Grover experienced a relapse at some future time. The medical reports differed as to the degree of permanent disability sustained by Grover.

On December 13, 1985, the hearing officer entered a decision awarding Grover permanent partial disability benefits. In his decision the hearing officer made the following pertinent findings: that Grover had reached maximum medical improvement but continued to need periodic medical maintenance care; that she had sustained a 20% permanent disability as a working unit as a result of the injury; and that her child care expenses were a necessary cost of the vocational rehabilitation services, since child care was essential to her ability to receive the benefits of the on-the-job training as a floral designer. In addition to ordering the respondents to pay permanent partial disability benefits to Grover, the hearing officer ordered that "medical care shall remain open and that respondents [shall] continue to pay for reasonable medical, surgical and hospital care necessary to relieve the effects of the injury." The hearing officer also ordered the respondents to reimburse Grover "for the cost of child care during the time she was participating in the vocational rehabilitation plan ... from which reimbursement [Grover] is to reimburse the La Plata County Department of Social Services for any child care expenses paid by it."

The respondents filed a petition for review and the case was referred to the commission. On May 5, 1986, the commission entered an order affirming that part of the hearing officer's decision assessing Grover's child care expenses against the respondents and reversing that part of the decision which left open the issue of medical care. The commission reasoned that "[a] claimant has either reached maximum medical improvement or not, for purposes of both liability for medical benefits and the finality and validity of a finding of permanent partial disability." Because the hearing officer had expressly found that Grover had reached maximum medical improvement and because the record did not establish that a particular course of continued medical treatment was necessary at that time, the commission concluded that the issue of medical benefits was closed,

subject to the filing of a petition to reopen within the requisite time limitations of section 8-53-113, 3B C.R.S. (1986).

Grover appealed the commission's order. The court of appeals affirmed that part of the order disallowing continued medical benefits after the entry of a final award of permanent partial disability. In the court of appeals' view, "[m]edical benefits can be awarded only until permanent disability has been determined and the final order thereon has been entered," and since the commission's finding was that Grover had reached maximum medical improvement the court of appeals held that the commission had "properly disallowed ongoing indefinite medical benefits." *Grover*, 739 P.2d at 901-02. The court of appeals reversed that part of the commission's order which awarded child care expenses to Grover. The court construed section 8-49-101(1)(a), 3B C.R.S. (1986), which states that "vocational rehabilitation benefits shall include tuition, fees, transportation, and weekly maintenance equivalent to what the employee would receive for temporary total disability benefits," to exclude any award "for child care expenses, even if [such expenses] are necessary in order to comply with the vocational rehabilitation plan." *Id.* at 902.

We thereafter granted Grover's petition for a writ of certiorari, which raises the following two questions: (1) whether the court of appeals correctly held that the commission lacked the authority to order, as part of a final award of permanent partial disability, the payment of medical benefits for any ongoing medical treatment necessary to relieve the claimant of the effects of the disabling injury when such treatment will not be received until sometime subsequent to the date of the final award; and (2) whether the court of appeals correctly held that the commission lacked the authority to order an employer to pay the costs of a claimant's child care expenses incurred while the claimant was engaged in a vocational rehabilitation program. Resolution of these questions requires an analysis of those provisions of the Workmen's Compensation Act of Colorado, §§ 8-40-101 to 8-54-127, 3B C.R.S.

(1986 & 1987 Supp.), which specifically relate to medical benefits and vocational rehabilitation services. The statutory provisions in effect at the time of Grover's accident and during the course of the administrative proceedings on her claim are found at section 8-49-101(1)(a) and (4), 3 C.R.S. (1985 Supp.), and state as follows:

(1)(a) Every employer, regardless of his method of insurance, shall furnish such medical, surgical, dental, nursing, and hospital treatment, medical, hospital, and surgical supplies, crutches, apparatus, and vocational rehabilitation, which shall include tuition, fees, transportation, and weekly maintenance equivalent to that which the employee would receive under section 8-51-102 for the period of time that the employee is attending a vocational rehabilitation course, as may reasonably be needed at the time of the injury or occupational disease and thereafter during the disability and period of vocational rehabilitation, to cure and relieve from the effects of the injury. In no event shall the injured employee be entitled to receive both temporary total disability benefits and income maintenance benefits while attending a vocational rehabilitation program.

\* \* \* \* \* \*

(4) Every employee who has suffered an injury covered by this article shall be entitled to vocational rehabilitation at a facility or institution approved by the division when, as a result of the injury or occupational disease, he is unable to perform work for which he has previous training or experience. Such vocational rehabilitation services shall continue for such period of time as may be reasonably necessary, not exceeding twenty-six weeks, for the purpose of restoring the employee to suitable employment. The director, on good cause shown, may extend, for an additional period not to exceed twenty-six weeks, the vocational rehabilitation treatment or services required. In no event shall the total time exceed fifty-two weeks for the rehabilitation services provided pursuant to this subsection (4) or for the payment of in-

come maintenance benefits as provided in paragraph (a) of subsection (1) of this section. If such services are not voluntarily offered by the employer or his insurance carrier and accepted by the employee, the director, on his own motion or upon application of any party in interest, may refer the employee to a qualified physician or facility for evaluation of the practicability of, need for, and kind of service, treatment, or training necessary and appropriate to render the employee fit for a remunerative occupation. Upon a showing that vocational rehabilitation is reasonably necessary, the director may order services and treatment recommended or such other rehabilitation, treatment, or service as he may deem necessary, such rehabilitation, treatment, or service to be provided and paid for in the same manner and with the same limitations as provided in paragraph (a) of subsection (1) of this section.

## II.

We first consider whether the court of appeals was correct in holding that the commission lacked the authority to order, as part of a final award of permanent partial disability, the payment of medical benefits for any ongoing medical treatment necessary to relieve the claimant of the effects of the disabling injury when such treatment will not be received until sometime subsequent to the date of the final award. The operative language of section 8–49–101(1)(a), 3 C.R.S. (1985 Supp.), pertinent to this issue states that "[e]very employer, regardless of his method of insurance, shall furnish such medical ... treatment ... as may reasonably be needed at the time of the injury ... and thereafter during the disability ... to cure and relieve from the effects of the injury." Grover argues that, in light of the fact that the disabling effects of a permanent disability may continue after an award of permanent partial disability has been entered, the obvious purpose of the statutory language "thereafter during the disability" in section 8–49–101(1)(a) is to authorize the hearing officer and the commission to order an employer to pay the costs of medical treat-

ment reasonably necessary to relieve the worker from the effects of the industrial injury even though such medical treatment will not be received until sometime subsequent to the award of permanent partial disability. We agree with Grover's argument.

### A.

The General Assembly enacted the Workmen's Compensation Act (Act) in order to relieve injured workers from the adverse economic effects caused by a work-related injury or occupational disease. *E.g., Bellendir v. Kezer*, 648 P.2d 645, 647 (Colo. 1982); *City of Boulder v. Payne*, 162 Colo. 345, 350, 426 P.2d 194, 197 (1967). It is in light of this beneficent purpose that we have consistently given the Act a liberal construction in favor of the interests of injured workers. *E.g., Padilla v. Industrial Comm'n*, 696 P.2d 273 (Colo.1985); *James v. Irrigation Motor and Pump Co., Inc.*, 180 Colo. 195, 503 P.2d 1025 (1972); *see Finnerman v. McCormick*, 499 F.2d 212 (10th Cir.), *cert. denied*, 419 U.S. 1049, 95 S.Ct. 624, 42 L.Ed.2d 644 (1974).

The Act is designed to compensate an injured worker for two distinct losses resulting from an industrial injury or occupational disease: the loss of earning capacity based on the concept of disability, and medical and other costs associated with the injury or disease. *See* 2 A. Larson, *The Law of Workmen's Compensation* § 57.11 (1987). Consistent with this statutory design, the Act authorizes an award of permanent disability, either partial or total, as a means of compensating the injured worker for the loss of earning capacity. *Vail Associates, Inc. v. West*, 692 P.2d 1111, 1114 (Colo.1984); *Byouk v. Industrial Comm'n*, 106 Colo. 430, 434, 105 P.2d 1087, 1089 (1940). The Act also, pursuant to section 8–49–101(1)(a), authorizes an award of medical benefits reasonably necessary to relieve the injured worker from the effects of the industrial injury or occupational disease. While both an award of permanent disability and an award of medical benefits are intended to offset the adverse economic consequences sustained by an injured

worker, the need for medical treatment does not necessarily cease upon the entry of an award of permanent disability. Once a worker has reached maximum medical improvement from a disabling injury and the worker's permanent disability and concomitant decreased earning capacity have been determined, an award of permanent disability is appropriate. It is an obvious fact of industrial life, however, that an injured worker can reach maximum medical improvement from an injury and yet require periodic medical care to prevent further deterioration in his or her physical condition.

■ Because the Act should be construed in a manner conducive to the interests of the injured worker, we believe it would be highly imprudent to engraft onto the statutory scheme a substantial limitation on medical benefits when no such limitation is set forth in the Act itself. *See Chartier v. Winslow Crane Service Co.,* 142 Colo. 294, 317, 350 P.2d 1044, 1056 (1960). We thus construe the statutory language "thereafter during the disability" in section 8–49–101(1)(a) as legislative authority for the hearing officer and the commission to order the employer to pay the claimant's medical expenses for any future treatment reasonably necessary to relieve the claimant from the effects of the industrial injury or occupational disease even though such treatment will not be received until sometime subsequent to the award of permanent disability.[2]

In addition to being in accord with the humane purposes of the Act, our construction of section 8–49–101(1)(a) is consistent with the legislative intent underlying the medical benefits provision as evidenced by an examination of the various amendments adopted by the General Assembly over the years following the original enactment of the provision in 1919. *See 2A Sutherland Statutory Construction* § 45.10 (4th ed. 1984) (amendments to statute may properly be considered when determining legislative intent); *see also Micciche v. Billings,* 727 P.2d 367, 372 (Colo.1986) (repealed statutes considered in determining legislative intent underlying present statutory scheme); *Steck v. Prentice,* 43 Colo. 17, 21, 95 P. 552, 554 (1908) (same); *Deremer v. Workmen's Compensation Appeal Bd.,* 61 Pa. Cmwlth. 415, 433 A.2d 926, 928 (1981) ("The deletion of statutory language by the legislature renders the language inoperative and indicates that the legislature has admitted a different intent."). As originally enacted in 1919, the statute limited medical benefits to $200 "at the time of the injury and thereafter during the disability, but not exceeding sixty days from the date of the accident." Ch. 210, sec. 51, 1919 Colo.Sess.Laws 700, 719. In 1929, the statute was amended to provide $500 "at the time of the injury and thereafter during the disability, but not exceeding four (4) months from the date of the accident." Ch. 186, sec. 51, 1929 Colo.Sess.Laws 646, 650. Subsequent amendments in 1949, 1957, 1963, and 1967 increased the monetary limitation to $5,000 and also increased the time limitation during which medical benefits were available to six months from the date of the accident. Ch. 185, sec. 1, 1949 Colo.Sess.Laws 522, 522 ($1,000 and six months); ch. 177, sec. 1, § 81–10–1, 1957 Colo.Sess.Laws 501, 501 ($1,500 and six months); ch. 180, sec. 5, § 81–10–1, 1963 Colo.Sess.Laws 640, 643 ($2,500 and six months); ch. 279, sec. 1, § 81–10–1, 1967 Colo.Sess.Laws 513, 513 ($5,000 and six months). In 1971, however, the General Assembly, while increasing the monetary limitation to $7,500, deleted the language limiting the availability of medical benefits to six months from the date of the accident.[3] Ch. 225, sec. 5, § 81–10–1(1)(a), 1971

**2.** In construing section 8–49–101(1)(a) to authorize an order for the payment of a claimant's future medical expenses for treatment received subsequent to the entry of an award of permanent disability, we expressly overrule that portion of the court of appeals' decision in *Pinkard Construction Co. v. Industrial Comm'n,* 694 P.2d 858 (Colo.App.1984), which held that medical benefits under section 8–49–101(1)(a) are not available after an award of permanent disability has been entered, and the court of appeals' reaffirmation of *Pinkard* in *Benedict v. Industrial Claim Appeals Office,* 740 P.2d 541 (Colo.App. 1987).

**3.** In 1971 the General Assembly enacted the Colorado Major Medical Insurance Fund Act,

Colo.Sess.Laws 905, 907. A subsequent amendment in 1973 increased the medical benefits limitation to $20,000, ch. 271, sec. 3, § 81-10-1(1)(a), 1973 Colo.Sess.Laws 943, 944, and a 1975 amendment added vocational rehabilitation services to the statutory scheme, ch. 72, sec. 1, § 8-49-101(1)(a), 1975 Colo.Sess.Laws 313, 313, but neither the 1973 nor the 1975 amendment effectuated any change in the open-ended term for medical benefits resulting from the 1971 amendment. In 1981, the General Assembly deleted the $20,000 limitation on medical benefits, ch. 82, sec. 2, § 8-49-101(1)(a), 1981 Colo.Sess. Laws 466, 467, again without in any way limiting the time during which medical benefits were available. We believe that the history of the medical benefits provision, from its original enactment in 1919 to the present version applicable here, clearly manifests a legislative intent in section 8-49-101(1)(a) to make medical benefits available to a disabled worker without regard to any time limitation measured from the date of the injury as long as further medical treatment is reasonably necessary to relieve the worker from the effects of the industrial injury or occupational disease.

Furthermore, the construction we herein adopt accords with the interpretation which other courts have placed on statutory enactments similar to the medical benefits provision of section 8-49-101(1)(a). *See Mad Butcher, Inc. v. Parker,* 4 Ark.App. 124, 628 S.W.2d 582 (1982) (statute authorizing award of medical benefits as "may be reasonably necessary for the treatment of the injury" entitles claimant to receive medical benefits after award of income benefits entered); *Professional Administrators v. Macias,* 448 So.2d 1159 (Fla.Dist. App.1984) (statute authorizing award of medical benefits "as the nature of the inju-ry or the process of recovery may require" entitles claimant to medical benefits even after attaining maximum medical improvement); *Williams v. A.B. Chance Co.,* 676 S.W.2d 1 (Mo.App.1984) (statute authorizing award of medical benefits to "cure and relieve from the effects of the injury" entitles injured worker to ongoing award of medical benefits after entry of permanent disability award); *Little v. Penn Ventilator Co.,* 317 N.C. 206, 345 S.E.2d 204 (1986) (statute authorizing award of medical benefits reasonably required to "effect a cure or give relief" entitles claimant to ongoing award of future medical benefits for purposes of monitoring and preventing further decline in claimant's condition); *City of Frederick v. Elmore,* 587 P.2d 1365 (Okla. 1978) (statute requiring employer to furnish all required medical care authorizes award of continuing medical benefits along with award of permanent disability if evidence indicates further medical treatment is reasonable and necessary); *Kennecott Copper Corp. v. Industrial Comm'n,* 597 P.2d 875 (Utah 1979) (no limit to time during which medical benefits must continue to be furnished under statute authorizing award of medical benefits "as necessary to treat the patient").

In so construing section 8-49-101(1)(a), however, we hasten to emphasize that before an order for future medical benefits may be entered there must be substantial evidence in the record to support a determination that future medical treatment will be reasonably necessary to relieve the injured worker from the effects of the work-related injury or occupational disease. *See* § 8-53-120, 3B C.R.S. (1987 Supp.) (findings supported by substantial evidence shall not be altered on appeal). If at the hearing on the final award of permanent disability there is substantial evidence

which established a major medical insurance fund to help defray the cost of medical, surgical, and hospital expenses necessary to effect the recovery, alleviate the pain, or reduce the disability of employees entitled to disability benefits under either the Workmen's Compensation Act or the Occupational Disease Disability Act. Ch. 227, sec. 3, §§ 81-20-1 to -10, 1971 Colo. Sess.Laws 919, 920-23. Payments from the fund were authorized when the injured employ-ee had exhausted the employer's limits of liability for medical benefits. The General Assembly amended the Major Medical Insurance Fund Act in 1981 to provide that no further cases could be accepted into the fund, and that after all payments had been made for all cases accepted into the fund any remaining balance would revert to the state's general fund. Ch. 82, sec. 4, § 8-66-112, 1981 Colo.Sess.Laws 466, 468.

of such need for future treatment, the hearing officer may appropriately order the employer to pay the costs of future treatment, as may the Industrial Claim Appeals Office on review of the hearing officer's order.[4] The employer, of course, may contest any future claims for medical treatment on the basis that such treatment is unrelated to the industrial injury or occupational disease. In addition, the employer retains the right to file a petition to reopen, pursuant to section 8–53–113, 3B C.R.S. (1986 & 1987 Supp.), for the purpose of either terminating the claimant's right to receive medical benefits or reducing the amount of benefits available to the claimant.

### B.

In urging a contrary construction of section 8–49–101(1)(a), the respondents argue that section 8–53–113, 3B C.R.S. (1985 Supp.), which requires that a petition to reopen an award for the purpose of increasing, decreasing, or terminating previously ordered compensation and medical benefits be filed "within six years from the date of the injury or within two years from the date the last compensation becomes due and payable," evidences a legislative intent to authorize the payment of medical benefits only until a final award has been entered, and after such an award only by way of a petition to reopen filed within the time limitations of section 8–53–113, with the result that the phrase "during the disability" in section 8–49–101(1)(a) should be construed to mean "temporary disability" only. We are unpersuaded by the respondents' argument.

■ Such a construction, in our view, would distort the statutory scheme by ignoring the separate and distinct statutory goals served by the medical benefits provision of section 8–49–101(1)(a) on the one hand, and the reopening provision of section 8–53–113 on the other. As previously stated, section 8–49–101(1)(a) authorizes a hearing officer or the Industrial Claim Appeals Office to order an employer to provide a worker with medical benefits to pay for medical treatment reasonably necessary to relieve the employee from the effects of a work-related injury or occupational disease even though such medical treatment will occur subsequent to an award of permanent disability, as long as there is substantial evidence to support the need for such treatment when the final award of permanent disability is entered. In contrast, the reopening provision of section 8–53–113 is designed to address those situations in which, because of an error, mistake, or change in the injured worker's condition, further review of a previously entered award is necessary in the interest of basic fairness. At the time a final award is entered, available medical information may be inadequate, a diagnosis may be incorrect, or a worker may experience an unexpected and unforeseeable change in condition subsequent to the entry of a final award. When such circumstances occur, section 8–53–113 provides recourse to both the injured worker and the employer by giving either party the opportunity to file a petition to reopen the award. The reopening provision, therefore, reflects a legislative determination that "in workers' compensation cases the goal of achieving a just result overrides the interest of litigants in achieving a final resolution of their dispute." *Padilla,* 696 P.2d at 278. The fact that the General Assembly has provided time limitations for the reopening of awards in the interest of fairness, however, is not to say that it meant to preclude an award for future medical treatment reasonably necessary to provide relief to the worker from the effects of an industrial injury or occupational disease so long as the need for such treatment is supported by substantial evidence. We thus reject the respondents' proposed construction as antithetical to the basic goal of workers' compensation legislation, which is to alleviate the economic burden resulting to workers from the harmful consequences of

---

4. In this case, the respondents did not file a cross-petition to review the sufficiency of the evidence to support the hearing officer's determination on Grover's need for future medical treatment, and, consequently, we do not address that aspect of the case.

work-related injuries and occupational diseases.[5]

## III.

We turn now to consider whether the court of appeals correctly held that the commission lacked the authority to order the employer to pay the costs of Grover's child care expenses incurred while she was engaged in the vocational rehabilitation program. The court of appeals based its resolution of this issue on the fact that section 8–49–101(1)(a) did not expressly include such expenses as a form of vocational rehabilitation benefits. We reach a contrary result.

## A.

The version of section 8–49–101(1)(a) applicable to this case stated in pertinent part

5. In 1988 the General Assembly enacted Senate Bill 141 which amended section 8–53–113 by providing that a petition to reopen must be filed "within six years from the date of the injury," and by deleting the language "or at any time within two years after the date the last compensation becomes due and payable, whichever is longer." Senate Bill 141 also adds a subsection 2 to section 8–53–113 which provides as follows:

(2)(a) At any time within two years after the date the last temporary or permanent disability benefits or dependent benefits excluding medical benefits become due or payable, the director or an administrative law judge may, after notice to all parties, review and reopen an award on the ground of an error, a mistake, or a change in condition, except for those settlements entered into pursuant to section 8–53–105 in which the claimant waived his right to reopen an award; but a settlement may be reopened at any time on the ground of fraud or mutual mistake of material fact. If an award is reopened under this paragraph (a), compensation and medical benefits previously ordered may be ended, diminished, maintained, or increased. No such reopening shall affect the earlier award as to moneys already paid. Any order entered under this paragraph (a) shall be subject to review in the same manner as other orders.

(b) At any time within two years after the date the last medical benefits become due and payable, the director or an administrative law judge may, after notice to all parties, review and reopen an award only as to medical benefits on the ground of an error, a mistake, or a change in condition, except for those settlements entered into pursuant to section 8–53–105 in which the claimant waived his right to reopen an award; but a settlement may be

that "[e]very employer, regardless of his method of insurance, shall furnish ... vocational rehabilitation, which shall include tuition, fees, transportation, and weekly maintenance ... for the period of time that the employee is attending a vocational rehabilitation course." In addition to subsection (1)(a), subsection (4) of section 8–49–101, 3 C.R.S. (1985 Supp.), provided in pertinent part as follows:

Upon a showing that vocational rehabilitation is reasonably necessary, the director [of the division of labor] may order services and treatment recommended or such other rehabilitation, treatment, or service as he may deem necessary, such rehabilitation, treatment, or service to be provided and paid for in the same manner and with the same limitations as provided in paragraph (a) of subsection (1) of this section.[6]

reopened at any time on the ground of fraud or mutual mistake of material fact. If an award is reopened under this paragraph (b), medical benefits previously ordered may be ended, diminished, maintained, or increased. No such reopening shall affect the earlier award as to moneys already paid. Any order entered under this paragraph (b) shall be subject to review in the same manner as other orders.

Senate Bill 141, by its express terms, applies only to petitions to reopen filed on or after July 1, 1988. It accordingly has no applicability to the present case, and we express no opinion as to the effect of Senate Bill 141 on factual situations similar to the one presented here.

6. In 1987 the General Assembly amended section 8–49–101(1)(a) by deleting all references to vocational rehabilitation, ch. 51, sec. 2, § 8–49–101(1)(a), 1987 Colo.Sess.Laws 387, 387–88, and also repealed in their entirety sections 8–49–101(4), (5), and (6) which governed the furnishing of vocational rehabilitation services, ch. 51, sec. 21, § 8–49–101(4), (5), and (6), 1987 Colo.Sess.Laws 387, 393. At the same time, the General Assembly required the director of the division of labor to collect and analyze data concerning the impact of these statutory changes on "the vocational outcome of those injured employees previously offered services" and to report to the General Assembly on the impact. Ch. 51, sec. 11, § 8–52–114, 1987 Colo. Sess.Laws 387, 391. We note, however, that section 8–49–101(3), 3B C.R.S. (1987 Supp.), was not repealed. That section states that the director of the division of labor "has the power to establish a schedule fixing the fees for which all ... vocational rehabilitation treatment rendered to employees under this section shall be compensated."

The plain language of subsection (4) thus authorizes an order requiring an employer to provide the injured employee, in addition to the vocational rehabilitation items expressly listed in subsection (1)(a), with such other "rehabilitation, treatment, or service" as is necessary to restore the injured worker to suitable employment.

The interrelationship between these two subsections clearly demonstrates that the listing of vocational rehabilitation items in subsection (1)(a) was not intended to be exhaustive of an employer's vocational rehabilitation responsibilities. If such were the intent, it would follow that an employer could be obligated to pay an injured worker's "tuition," which is expressly listed in subsection (1)(a) as part of a vocational rehabilitation program, but could never be required to pay for such necessary items as books, equipment, or other essential supplies because such items are not expressly listed in that subsection. We must presume that the legislature, in enacting section 8–49–101, intended a just and reasonable result. § 2–4–201(1)(c), 1B C.R.S. (1980). Child care expenses can be as "necessary" a service for a working parent's successful completion of a vocational rehabilitation program as any of the other items specifically listed in subsection (1)(a) of section 8–49–101.

### B.

The respondents argue that child care expenses should not have been assessed against the employer in this case because Grover's child care expenses would have been incurred regardless of her injury and thus were not part of her vocational rehabilitation plan. While it is true that Grover would have been obliged to pay child care expenses if she had not been injured, the fact of the matter is that Grover was injured and the hearing officer expressly found in that regard as follows: that Grover's injury prevented her from performing the work for which she was previously employed; that vocational rehabilitation was necessary to return her to suitable employment; and that child care was a necessary cost of rehabilitation services. These findings amount to nothing less than an unequivocal determination that adequate child care for Grover's children was an essential component of a successful rehabilitation program. Since Grover's child care expenses were directly attributable to the vocational rehabilitation program, it was clearly within the discretion of the hearing officer to assess the costs of child care against the respondents. We thus hold that the hearing officer and the commission had the authority to order the employer to pay Grover's child care expenses, since such expenses were necessary to permit Grover to effectively participate in the vocational rehabilitation program.

The judgment of the court of appeals is reversed and the case is remanded to that court with directions to return the case to the Industrial Claim Appeals Office, formerly the commission, for the entry of an order consistent with the views herein expressed.

ERICKSON, J., dissents and
VOLLACK, J., joins in the dissent.

ERICKSON, Justice, dissenting:

I respectfully dissent. I would affirm the court of appeals decision in *Grover v. Industrial Commission*, 739 P.2d 900 (Colo.App.1987). The court of appeals affirmed the finding of the Industrial Commission that the claimant had reached maximum medical improvement. The finding was supported by substantial evidence. Accordingly, the Commission properly disallowed further ongoing and indefinite medical benefits.

On the issue of the cost of child care, I again agree with the court of appeals. Although the child care costs were occasioned by the vocational rehabilitation program, there is no statutory basis or case authority for ordering the payment of such costs. I would therefore disallow the claim for child care costs. If such benefits are to be provided, the rights should be created by legislative enactment and not judicial fiat.

I am authorized to say that Justice VOL-LACK joins in this dissent.