**Charles Edward REYNOLDS,
Petitioner,**

v.

**The INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO; Director, Division of Labor, Department of Labor and Employment; Dual Drilling and Highlands Insurance Co., Respondents.**

**No. 89CA0183.**

Colorado Court of Appeals,
Div. I.

May 3, 1990.

Rehearing Denied June 7, 1990.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const., art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

Dawes and Crane, P.C., Bethiah Beale Crane, Durango, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Michael P. Serruto, Asst. Atty. Gen., Denver, for respondents Industrial Claim Appeals Office and Director, Div. of Labor.

Halaby & McCrea, Bruce B. McCrea, Thomas L. Kanan, Denver, for respondents Dual Drilling and Highlands Ins. Co.

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const., art. VI, Sec. 5(3),

Opinion by Judge SILVERSTEIN *.

Charles Edward Reynolds, claimant, seeks review of a final order of the Industrial Claim Appeals Office (Panel) finding that claimant had reached maximum medical improvement, that vocational rehabilitation benefits should be terminated, and that claimant was not entitled to medical benefits for a replacement prosthesis. We affirm in part, set aside in part, and remand with directions.

Claimant sustained an industrial injury to his right foot in December 1985, which resulted in amputation of the lower leg and foot. His employer, respondent Dual Drilling and its insurer, respondent Highlands Insurance Co., admitted liability for the injury and provided medical care and temporary disability benefits to the claimant.

In May 1988, a hearing was held on the issues of temporary and permanent disability, vocational rehabilitation, and medical benefits. The Panel determined that claimant had reached maximum medical improvement and assigned him a permanent disability rating of 28 per cent as a working unit. The Panel further determined that vocational rehabilitation benefits should be terminated and that claimant had failed to establish his entitlement to medical benefits for a replacement prosthesis.

## I.

Claimant contends that the finding of maximum medical improvement was erroneous as a matter of law. He argues that a determination on permanent disability was premature in view of his treating physician's recommendation that he undergo additional surgery. We agree that this was error.

Maximum medical improvement exists when the underlying condition causing the disability has become stable and nothing further in the way of treatment will improve that condition. *Golden Age Manor v. Industrial Commission*, 716 P.2d 153 (Colo.App.1985). When a course

and § 24–51–1105, C.R.S. (1988 Repl. Vol. 10B).

of treatment has a reasonable prospect of success and a claimant willingly submits to such treatment, a finding of maximum medical improvement is premature. *See Dziewior v. Michigan General Corp.*, 672 P.2d 1026 (Colo.App.1983).

In finding the claimant had reached maximum medical improvement, the Panel relied on a select portion of the treating physician's testimony, based on the claimant's condition in April 1987, more than one year *prior* to the hearing on permanent disability. The physician testified that, after examining the claimant in April 1987, he believed that claimant's condition had stabilized and that no further medical intervention would be necessary. However, the physician further testified that the claimant's condition had changed by March 1988, two and one-half months *prior* to the hearing on permanent disability, when he examined the claimant because of his complaints of persistent pain.

On the basis of this latter examination, the physician recommended that claimant undergo further surgery. The physician stated that another possibility was to perform further amputation. However, he opined that the claimant's only alternative to further surgery was to use crutches continuously and not to put any weight on the amputated stump. He further stated that additional surgery could affect the claimant's physical restrictions and disability rating.

We conclude that the undisputed change in the claimant's condition plus his treating physician's recommendation that he undergo further surgery were facts inconsistent with a determination of maximum medical improvement. *See Golden Age Manor v. Industrial Commission, supra; Dziewior v. Michigan General Corp., supra.*

In affirming the order, the Panel relied on *Grover v. Industrial Commission*, 759 P.2d 705 (Colo.1988), in which the court held that a worker may reach maximum medical improvement and yet require continued medical care. However, *Grover* is distinguishable since in that case the employer and its insurer were ordered to pay for continuing medical, surgical, and hospi-

tal care. In contrast, here, the order made no provision for the employer and its insurer to pay for the cost of the claimant's surgery. In addition, the evidence in *Grover* established that the worker's condition was not likely to improve. Here, however, the record established that surgery could improve the claimant's condition.

Because the evidence fails to support a finding of maximum medical improvement, the Panel erred in its order. *See Gruntmeir v. Tempel & Esgar, Inc.*, 730 P.2d 893 (Colo.App.1986).

## II.

The claimant next contends that the Panel erred in denying benefits for a replacement prosthesis, and he asserts that the benefit ceiling on prosthetic devices under § 8–49–101(1)(b), C.R.S. (1986 Repl. Vol. 3B) denies him equal protection of the law. We reject both contentions.

Although the benefit ceiling on medical expenses was repealed in 1981, *see* Colo. Sess.Laws 1981, Ch. 82 at 467, the General Assembly elected to retain a similar restriction on benefits for artificial limbs, prosthetic devices, and other bodily aids. Under § 8–49–101(1)(b), the employer's liability is limited to furnishing the original prosthetic device or artificial member and one replacement device or apparatus within two years from the date the original device was furnished.

The right to disability benefits is not a fundamental right, *Claimants in re Death of Kohler*, 671 P.2d 1002 (Colo.App. 1983), *see Olson v. Public Service Co.*, 190 Colo. 512, 549 P.2d 780 (1976), and the legislative body has broad discretion in implementing social programs designed to promote public health, safety, and welfare. *See Anaya v. Industrial Commission*, 182 Colo. 244, 512 P.2d 625 (1973). If a legislative classification neither impinges upon a fundamental right nor involves a suspect class, the constitutional guarantee of equal protection requires only that the classification bear a rational relationship to a permissible governmental purpose. *Bellendir v. Kezer*, 648 P.2d 645 (Colo.1982).

Applying that standard here, we are satisfied that the challenged classification satisfies equal protection. We note that medical benefits under § 8–49–101(1)(a) are available only for the period of time necessary to relieve the worker from the effects of the industrial injury or occupational disease. *Grover v. Industrial Commission, supra.* In contrast, a prosthesis is generally furnished when further efforts to treat the affected member would be futile. Hence, in view of this difference, the General Assembly could determine to limit liability under § 8–49–101(1)(b) in order to allocate costs more efficiently and to insure the provision of other medical and compensation benefits mandated under the Act. We therefore conclude that the General Assembly acted within its legislative prerogative in retaining the benefit ceiling under § 8–49–101(1)(b), and that the statute is not unconstitutional.

The evidence supports the ruling that claimant was not entitled to a replacement prosthesis. Section 8–49–101(1)(b) provides that within two years after the original device is furnished, the worker may "petition the division for one additional replacement upon grounds that the employee has undergone an anatomical change since the original was furnished, and that the anatomical change is directly related to and caused by the injury, and that the replacement is necessary to improve the function of each member or part of the body so affected or to relieve pain and discomfort."

Here, a physician's testimony and reports support the finding that a replacement prosthesis was not necessitated by an anatomical change after the original prosthesis was furnished. Although the physician's testimony was somewhat equivocal and could be construed to support a contrary finding, the resolution of the conflicting inferences by the Administrative Law Judge (ALJ) is binding on review. *See May D & F v. Industrial Claim Appeals Office,* 752 P.2d 589 (Colo.App.1988).

We also agree that claimant timely raised the issue of the replacement prosthesis prior to the May 1988 hearing and that the issue was tried by the parties at that hearing.

### III.

We also find no error in the Panel's decision affirming the denial of vocational rehabilitation benefits. The claimant stated, in response to questions from both his own attorney and the ALJ, that he was not interested in pursuing vocational rehabilitation. The claimant's testimony, together with other evidence in the record, is sufficient to support the decision to deny further vocational rehabilitation benefits. *See May D & F v. Industrial Claim Appeals Office, supra.*

Further, in view of the claimant's testimony, the ALJ acted within his discretion in refusing to admit further testimony on the question of vocational rehabilitation. *See IPMC Transportation Co. v. Industrial Claim Appeals Office,* 753 P.2d 803 (Colo.App.1988).

The determination of maximum medical improvement is set aside, and the cause is remanded for further proceedings on that issue. The remainder of the order is affirmed.

PIERCE and PLANK, JJ., concur.