**MILCO CONSTRUCTION and Colorado Compensation Insurance Authority, Petitioners,**

v.

**William COWAN, The Industrial Claim Appeals Office of the State of Colorado, and Director, Division of Workers' Compensation, Respondents.**

No. 91CA1838.

Colorado Court of Appeals, Div. III.

Dec. 3, 1992.

As Modified on Denial of Rehearing May 20, 1993.

Certiorari Denied Oct. 18, 1993.

Paul Tochtrop, Denver, for petitioners.

Sawaya & Rose, P.C., Thomas J. Roberts, Denver, for respondent William Cowan.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John R. Parsons, Asst. Atty. Gen., Denver, for respondents Industrial Claim Appeals Office and Director, Div. of Workers' Compensation.

Opinion by Judge CRISWELL.

Petitioners, Milco Construction (the employer) and Colorado Compensation Insurance Authority, seek review of an order of the Industrial Claim Appeals Office (Panel) that appears to authorize William Cowan, the claimant, to undergo a total knee replacement procedure at the employer's expense at such time in the future, if ever, that his condition may require it. To the extent that the Panel's order may be said to authorize such procedure, we set it aside.

Claimant sustained an admitted industrial injury to his left knee in 1979, and he reinjured his knee in 1983. He underwent surgery for his knee injury in 1979 and again in 1985. Sometime after this second surgery, claimant developed pain in his left hip and, in 1986, underwent surgery for this condition, which the Administrative Law Judge (ALJ) determined in an undisputed finding, not to be employment related.

In 1991, the surgeon who had performed all of the previous surgical procedures noted that the claimant had sustained a wasting of the left knee muscles and was experiencing pain at that location, which the surgeon attributed to arthritis resulting from the claimant's previous injuries and surgeries.

In April 1991, an evidentiary hearing was held before the ALJ with respect to the degree of permanent disability that the claimant had sustained as a result of his knee injuries and the extent to which he would be entitled to future medical benefits. No transcript of that hearing was prepared, and the evidence presented at that hearing has not been reviewed either by the Panel or by this court.

Hence, the only evidence before us that speaks to the necessity for the claimant to undergo any knee replacement surgery in the future is a written medical report furnished by his treating physician. This report states:

> I *feel* that he *may* require a joint replacement of the left knee and in addition, the left hip *at some time*. This is due to degenerative changes which are likely to occur.... I *believe* that there is a *reasonably good chance* that this individual will require a total joint replacement of the left knee *at some time in his life*. I would not anticipate that this would occur for *at least 15 to 20 years*. (emphasis supplied)

Thereafter, the ALJ issued his findings, conclusions, and award in which he determined that the claimant had sustained an eight percent permanent partial disability. With respect to the issue of continuing medical treatment, the ALJ said:

> Claimant has proven by a preponderance of the evidence that he is entitled to ongoing maintenance medical benefits pursuant to *Grover v. Industrial Commission*, 759 P.2d 705 (Colo.1988). Although I am not persuaded that the pro-

spective knee replacement is *maintenance* care, the evidence does show that claimant needs continuing prescription medication from Dr. Donaldson for his left knee pain. Respondent-insurer is liable for continuing prescription medication for the left knee condition. (original emphasis)

However, in addressing this subject in his order, the ALJ directed that:

Respondent-insurer shall pay for *all reasonable and necessary medical expenses to maintain* claimant's left knee condition after the date of maximum medical improvement. (emphasis supplied)

In its review of this order, the Panel concluded that the medical report described above was sufficiently substantial so as to entitle claimant to future knee surgery. Hence, it set aside the ALJ's order to the extent that that order "determined that claimant is not entitled to a future knee replacement operation." In doing so, the Panel suggested that the employer could contest the "reasonableness" of such procedure at a later time.

■ The issue presented here arises because of the intrinsic tension that exists between § 8–42–101(1)(a), C.R.S. (1992 Cum.Supp.) and § 8–43–303(2)(b), C.R.S. (1992 Cum.Supp.).

Section 8–42–101(1)(a) requires an employer to provide to an injured employee "such medical, surgical, dental, nursing, and hospital treatment ... as may be reasonably needed ... during the disability *to cure and relieve* the employee *from the effects of the injury.*" (emphasis supplied)

Section 8–43–303(2)(b), on the other hand, authorizes an award to be reopened "only as to medical benefits on the ground of an error, a mistake, or a change in condition...." A petition to reopen such an award for this purpose must be filed within two years after the last of previously ordered medical benefits becomes "due and payable."

Prior to the opinion in *Grover v. Industrial Commission,* 759 P.2d 705 (Colo. 1988), this court had concluded that the statutory predecessor to § 8–42–101(1)(a) did not authorize an order compelling an employer to continue to provide medical benefits to an injured employee who had reached "maximum medical improvement" and had been awarded permanent partial disability benefits. *See Pinkard Construction Co. v. Industrial Commission,* 694 P.2d 858 (Colo.App.1984). *Cf. Benedict v. Industrial Commission,* 740 P.2d 541 (Colo.App.1987).

In *Grover,* however, the supreme court noted that the statute required the payment of medical benefits "during the disability," if such benefits were designed to "relieve the employee of the effects of the injury." It also recognized that, even though an employee has reached maximum medical improvement, an injured worker may still require "periodic medical care to prevent further deterioration in his or her physical condition." Hence, it concluded that the fact that an employee had reached maximum medical improvement, so that future medical treatment would not affect a "cure" of the condition, did not prohibit an award requiring that the employer provide future medical treatment "reasonably necessary *to relieve* the claimant from the effects of the industrial injury...." *Grover, supra,* 759 P.2d at 710 (emphasis supplied).

The court also emphasized, however, that, in order to justify such an award, "there must be substantial evidence in the record to support a determination that future medical treatment will be reasonably necessary" to accomplish the statutory purpose. *Grover, supra,* 759 P.2d at 711. And, this need must be substantiated at the time of hearing on the final award for permanent disability.

In *Grover,* the award left the question of medical care "open," but ordered the employer to "continue to pay for reasonable medical, surgical and hospital care necessary to relieve the effects of the injury." That order did not specify the nature of any future medical benefits that might be required. While the supreme court expressly did not pass upon its adequacy as

"substantial," the evidence supporting this order established that the claimant's neck and shoulder injury was still causing pain, that she was continuing to be attended by physicians, and that her condition was not likely to improve, but could deteriorate, in which event further medical treatment would be needed.

Here, the ALJ's order did not determine whether the physician's report constituted substantial evidence that further medical treatment will be reasonably necessary. And, absent such a finding by the ALJ, the Panel had no authority to conclude that such report did constitute such evidence. *See Raisch v. Industrial Commission,* 721 P.2d 693 (Colo.App.1986).

Further, the ALJ seems to have applied an incorrect legal standard in passing upon the question whether future surgery of the nature described in the medical report could be authorized. His decision was apparently based upon his conclusion that, in order to enter a *Grover*-type order, the only future medical treatment available would be "maintenance care."

The ALJ did not define or describe the nature of the care to which this term refers. However, such a limitation is not referred to either by the Act or by the *Grover* opinion.

Section 8–42–101(1)(a) specifically requires the employer to provide medical treatment that is reasonably required to "relieve . . . from the effects of the injury." And, the order affirmed in *Grover* used this term to describe the nature of the future medical treatment that the employer was required to provide. Neither the statute nor the *Grover* opinion made any reference to "maintenance care," although the *Grover* court interpreted the pertinent statutory phrase to refer to medical care that was designed to "prevent future deterioration" of the claimant's condition.

We hold, therefore, that, if the evidence in a particular case establishes that, but for a particular course of medical treatment, a claimant's condition can reasonably be expected to deteriorate, so that he will suffer a greater disability than he has sus-

tained thus far, such medical treatment, irrespective of its nature, must be looked upon as treatment designed to relieve the effects of the injury or to prevent deterioration of the claimant's present condition.

Here, the ALJ did not determine whether substantial evidence had been presented that future knee replacement surgery would be necessary. Hence, to the extent that the Panel's decision was based upon such a determination, its order must be set aside.

On remand, the ALJ should first determine whether, by applying the legal standard described above, there is substantial evidence in the present record demonstrating reasonable necessity for future medical treatment. If so, a general order, similar to that described in *Grover,* should be entered. And, such present determination will be without prejudice to the right of either party to request reopening in accordance with the statute.

The order of the Panel is set aside, and the cause is remanded to it for further proceedings consistent with the views expressed in this opinion.

SMITH and ROTHENBERG, JJ., concur.