James E. **SULZER**, James Rash, and Daniel Scheuren, Petitioners,

v.

**MID–CENTURY INSURANCE COMPANY, Farmers Insurance Exchange, and State Farm Mutual Automobile Insurance Company, Respondents.**

No. 88SC354.

Supreme Court of Colorado, en banc.

July 9, 1990.

Rehearing Denied July 30, 1990.

---

Pelton & Pelton, Bradford Pelton, Colorado Springs, for petitioner Sulzer.

Peter A. Goldstein, P.C., Peter A. Goldstein, Colorado Springs, for petitioners Rash and Scheuren.

Retherford, Mullen, Rector & Johnson, Anthony A. Johnson, Neil C. Bruce, Colorado Springs, for respondents.

Aisenberg & Kaplan, P.C., Bennett S. Aisenberg, H. Paul Himes, Jr., Denver, for amicus curiae Vocational Rehabilitation Specialists.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *Sulzer v. Mid–Century Insurance Co.*, 765 P.2d 606 (Colo.App.1988), the Court of Appeals affirmed the trial court's judgment holding that under applicable provisions of the Colorado Auto Accident Reparations Act, §§ 10–4–701 to –723, 4A C.R.S. (1987) (hereinafter the Act), petition-ers James E. Sulzer, James Rash and Daniel Scheuren were not entitled to subsistence expense payments under conforming no-fault contracts of insurance issued by respondents Mid–Century Insurance Company, Farmers Insurance Exchange, and State Farm Mutual Automobile Insurance Company. Having granted certiorari to consider the propriety of this interpretation of the statute, we affirm.

I

The pertinent facts were stipulated at trial. Each petitioner was injured in an automobile accident and was a beneficiary under a conforming Colorado no-fault contract of insurance at the time of the accident. Each insurance policy contained a provision obligating the insurer to pay all reasonable costs of rehabilitative occupational training. Such provision is mandatory in conforming no-fault contracts of insurance. § 10–4–706(1)(c)(I)(A), 4A C.R.S. (1987).

Each petitioner requested his insurer to approve a rehabilitation plan, and each insurer did so. Each petitioner also requested his insurer to pay certain costs (hereinafter referred to as subsistence costs) in addition to the costs of the approved training programs.[1] The insurers denied the requests for payment of such subsistence costs.

The petitioners then filed separate civil actions seeking declarations that they were entitled to payment of the claimed subsistence costs under the respective insurance policies and under section 10–4–706(1)(c) of the Act. The three cases were consolidated for trial, all parties stipulated to certain material facts, and the parties filed motions and cross-motions for summary judgment seeking determination of whether the peti-

---

1. Sulzer requested payments for "maintenance or subsistence" of $200 per week during the period of his rehabilitation. Rash requested payments for a "subsistence allowance" for his living expenses during his school program, for moving and relocation expenses after school "for employment purposes," and for a "subsistence allowance" after school until he obtained full employment. Scheuren requested payments for a "subsistence or maintenance allow-ance" until his schooling commenced; for "moving and relocation costs" connected with travel from Denver, Colorado, to Wilmington, North Carolina, where the approved training program was offered; and for a "maintenance and subsistence allowance so [he] can exist" during the two-year course of study. It is assumed that in each case the costs were to be incurred more than fifty-two weeks after the accident.

tioners were entitled to the claimed payments. The trial court granted the respondents' motions and denied the petitioners' motions, holding that the requests were tantamount to requests for lost income benefits governed by section 10–4–706(1)(d) of the Act and were not costs of rehabilitative occupational training programs controlled by section 10–4–706(1)(c) of the Act. On appeal, the Court of Appeals affirmed.

## II

The parties agree that the extent of the respondents' obligations under the applicable provisions of the respective contracts of insurance is governed by section 10–4–706(1)(c) and (d) of the Act. Those provisions state in pertinent part as follows:

**Required Coverages.** (1) Subject to the limitations and exclusions authorized by this part 7, the minimum coverages required for compliance with this part 7 are as follows:

. . . .

(c)(I)(A) Compensation without regard to fault for payment of the cost of rehabilitation procedures or treatment and rehabilitative occupational training necessary because of bodily injury arising out of the use or operation of a motor vehicle. The procedures, treatment, or course of rehabilitation shall meet the following standards:

. . . .

(C) A course of occupational training shall be reasonable and appropriate for the particular case;

(D) A procedure, treatment, or training shall contribute substantially to the rehabilitation;

(E) The cost of a procedure, treatment, or training shall be reasonable in relation to its probable rehabilitative effects.

(II) An insurer obligated to provide direct benefits under this section shall be presumed to have complied with the provision for rehabilitation when the value of rehabilitation services or treatment provided under paragraph (c) of subsection (1) of this section shall have reached fifty thousand dollars within five years after an accident involving a motor vehicle.

(d)(I) Payment of benefits equivalent to one hundred of the first one hundred twenty-five dollars of loss of gross income per week, seventy percent of the next one hundred twenty-five dollars of loss of gross income per week, and sixty percent of any loss of gross income per week in excess thereof, with the total benefit under this subparagraph (I) not exceeding four hundred dollars per week, from work the injured person would have performed had he not been injured during a period commencing the day after the date of the accident, and not exceeding fifty-two additional weeks. In addition payment shall be provided for expenses not exceeding twenty-five dollars per day which are reasonably incurred for essential services in lieu of those the injured person would have performed without income during the period commencing the day after the date of the accident and not exceeding fifty-two additional weeks.

§ 10–4–706(1)(c)–(d)(I), 4A C.R.S. (1987).

Section 10–4–706(1)(c) establishes the right of an injured party to receive payment for the cost of rehabilitative occupational training programs for a period of five years after an accident. Section 10–4–706(1)(d)(I) establishes the right of an injured party to receive disability payments for a period of fifty-two weeks after an accident. The petitioners contend that the subsistence costs they seek are compensable as costs of rehabilitative occupational training as established by the former section. The respondents argue that such costs are more analogous to the disability income payments provided in the latter section.

The Act is designed to ensure that persons injured in automobile accidents are fully compensated for their injuries. *Travelers Indem. Co. v. Barnes*, 191 Colo. 278, 552 P.2d 300 (1976); *Leland v. Travelers Indem. Co. of Illinois*, 712 P.2d 1060, 1065 (Colo.App.1985), *cert. denied*. To that end, section 10–4–706 creates several general categories of benefits that all contracts of

insurance must contain, including the two sections here at issue. None of those categories requires insurers to pay subsistence costs, as the petitioners concede.

The General Assembly established a lost-income, or disability, benefit in subsection 706(1)(d)(I) of the Act. In so doing, it recognized the necessity of providing income to accident victims whose injuries might prevent them from obtaining employment to pay for necessary living expenses. During the times pertinent to this case, such benefits ended fifty-two weeks after the date of an accident.[2] This provision contains a relatively complex formula for calculating the amount of disability income payable to beneficiaries, including a limit on the total weekly amount available.

The General Assembly also established a rehabilitative occupational training benefit in subsection 706(1)(c)(I)(A) of the Act. In so doing it acknowledged the importance of encouraging persons injured in automobile accidents to acquire new skills when, because of such injuries, they cannot continue the employment they previously experienced. This benefit is available for a period of five years after the accident and is limited to a total of $50,000.

These two subsections appear sequentially in the section of the Act delineating those benefits which must be included in no-fault contracts of insurance. When considered together, they represent careful legislative decisions respecting the benefit structure of such contracts. Numerous alternatives were no doubt available to the General Assembly with respect to the amount and extent of disability benefits, the nature and extent of reimbursable rehabilitation expenses, and other potential mandatory benefits. In this context, it can-

not be concluded that legislative silence with respect to subsistence benefits in relation to rehabilitative occupational training programs is equivalent to legislative oversight.

Furthermore, the General Assembly had previously adopted legislation authorizing subsistence payment benefits in connection with job training programs in the Workmen's Compensation Act, § 8–49–101(1)(a), 3B C.R.S. (1986).[3] Section 10–4–707(5) of the Act specifically refers to the Workmen's Compensation Act in requiring certain benefit reductions. However, no provision for subsistence payments in connection with rehabilitative occupational training programs was incorporated into the Act. The General Assembly neither extended the one-year limitation period contained in the Act's disability benefit when the efficacy of rehabilitation programs would seem to require such extension nor indicated in its definition of the costs to be paid for rehabilitative occupational training programs any suggestion that subsistence costs were to be included as costs of those programs. Had the General Assembly wished to provide such a benefit, it certainly had the opportunity to do so.

The petitioners argue that the Act should be construed to include subsistence costs as an essential ingredient of the reasonable costs of particular rehabilitative occupational training programs on a case-by-case basis. They contend that such construction would further the broad remedial purposes of the Act and that a contrary construction would in some cases render the rehabilitative occupational training benefit meaningless.

---

**2.** The General Assembly amended the Act, effective June 1, 1989, providing for extended disability benefits when the "injured person is still undergoing rehabilitation procedures or treatment and rehabilitative occupational training pursuant to section 10–4–706(1)(c)." Ch. 82, sec. 1, § 10–4–710, 1989 Colo.Sess.Laws 458. In the debate concerning the adoption of this amendatory legislation, no mention was made of the Court of Appeals opinion in this case decided *approximately* one year prior to the effective date of the statute. *Colorado Auto*

*Accident Reparations Act: Hearings Before the Senate Business Committee,* 57th Gen.Assem., 1st Sess. (February 1, 1989); *Colorado Auto Accident Reparations Act: Hearings Before the House Business Committee,* 57th Gen.Assem., 1st Sess. (March 9, 1989).

**3.** The General Assembly subsequently removed the provision relating to vocational rehabilitation programs from § 8–49–101(1)(a), 3B C.R.S. (1986). Ch. 51, sec. 2, § 8–49–101(1)(a), 1987 Colo.Sess.Laws 387.

**1010**

The construction urged by the petitioners has inherent appeal. For example, it does appear inequitable that a covered injured party who is unable to commence a training program until two years after an accident would not be entitled to disability payments and, therefore, might well not be able to enter such program at all. However, the Act does provide that injured insureds may seek additional damages from other tortfeasors without jeopardizing the disability benefits to which they are entitled under the Act. § 10–4–714(1)(f). It is also noteworthy that in 1989, one year after the Court of Appeals reached its decision in this case, the General Assembly enacted legislation requiring insurers to offer as an optional benefit in no-fault contracts of insurance a provision for extended disability payments under section 10–4–706(1)(d) of the Act beyond one year from the date of an accident when the insured "is still undergoing rehabilitative occupational training...." § 10–4–710, 4A C.R.S. (1986 & 1989 Supp.).[4] In view of these circumstances, it is difficult to conclude that prior to 1989 the General Assembly intended that contracts of no-fault insurance must provide payments in the nature of extended disability benefits in connection with rehabilitative occupational training programs.

The petitioners also argue that the rationale of our decision in *Grover v. Industrial Commission of Colorado*, 759 P.2d 705 (Colo.1988), compels the result they seek. In *Grover*, we held that day care expenses may be deemed reasonably necessary costs associated with vocational training programs established by former section 8–49–

101(1)(a) of the Workmen's Compensation Act.[5]

The Workmen's Compensation Act expressly authorizes as costs of vocational rehabilitation several categories of expenses, including weekly maintenance expenses. In *Grover*, we concluded that the list of such reasonable items of expense was not exhaustive and that the Workmen's Compensation Act reflected a legislative intent to authorize additional items of expense when reasonably necessary to ensure effective vocational training.

The Act contains no provision suggesting that the costs of rehabilitative occupational training programs may be increased to include other costs necessary to permit participation in such programs. Section 10–4–706(1)(c)(I)(C) refers to a "course of occupational training," and section 10–4–706(1)(c)(I)(D) requires that any training must "contribute substantially to the rehabilitation." These quite particularized provisions suggest that in requiring benefits for rehabilitative occupational training to be included in no-fault contracts of insurance the General Assembly did not adopt the broad policies of inclusion that marked its treatment of vocational rehabilitation programs compensable under the Workmen's Compensation Act. Our decision in *Grover* construing provisions of the latter statute does not compel adoption of the petitioners' proposed construction of the Act.

## III

In sum, we conclude that the rehabilitative occupational training benefit which

---

4. Ch. 82, sec. 1, § 10–4–710, 1989 Colo.Sess. Laws 458.

5. That former statute contains the following pertinent provisions:

> **Employer must furnish medical aid—approval of plan.** (1)(a) Every employer, regardless of his method of insurance, shall furnish such medical, surgical, dental, nursing, and hospital treatment, medical, hospital, and surgical supplies, crutches, apparatus, and vocational rehabilitation, which shall include tuition, fees, transportation, and weekly maintenance equivalent to that which the employee would receive under section 8–51–102 for the period of time that the employee is attending a vocational rehabilitation course,

as may reasonably be needed at the time of the injury or occupational disease and thereafter during the disability and period of vocational rehabilitation, to cure and relieve from the effects of the injury....

> (4) ... Upon a showing that vocational rehabilitation is reasonably necessary, the director may order services and treatment recommended or such other rehabilitation, treatment, or service as he may deem necessary, such rehabilitation, treatment, or service to be provided and paid for in the same manner and with the same limitations as provided in paragraph (a) of subsection (1) of this section. § 8–49–101(1) & (4), 3B C.R.S. (1986).

must be included in no-fault contracts of insurance does not require payment of subsistence costs to covered persons when those costs are incurred in connection with such training. Neither the purpose of the Act nor our decision in *Grover v. Industrial Commission*, 759 P.2d 705 (Colo.1988), compels a contrary conclusion. We therefore affirm the decision of the Court of Appeals.

The judgment is affirmed.