**UNITED SERVICE AUTO ASSOCIATION (USAA), Plaintiff–Appellee,**

v.

**Cheryl A. MARTIN, Defendant– Appellant.**

**No. 91CA1735.**

Colorado Court of Appeals, Div. I.

Oct. 8, 1992.

**392**

Zupkus & Ayd, P.C., Patricia M. Ayd, Thomas R. Strasburger, Denver, for plaintiff-appellee.

Robert F. Harkins, Colorado Springs, for defendant-appellant.

Weller, Freidrich, Ward & Andrew, Mari K. Perczak, Denver, amicus curiae for Colorado Rehabilitation Ass'n and Colorado Chapter of Nat. Ass'n of Rehabilitation Professionals in the Private Sector.

Opinion by Judge DAVIDSON.

In this insurance coverage dispute, defendant, Cheryl Martin, appeals from the summary judgment entered in favor of plaintiff, United Service Automobile Association (USAA). We affirm.

Martin sustained head injuries in an automobile accident and, as a result, suffered mental impairment. At the time of the accident, she was insured under an automobile insurance policy issued by USAA.

She entered a cognitive rehabilitation program with Olson Vocational Services (Olson) and, claiming that occupational rehabilitation was necessary as a result of her injuries, subsequently requested payment from USAA for all such expenses incurred. USAA paid for certain of these expenses but refused payment for services which it characterized as "job search and placement assistance" on the grounds that such services were neither covered by the insurance policy nor required by the Colorado Auto Accident Reparations Act, § 10-4-701, et seq., C.R.S. (1987 Repl.Vol. 4A) (No Fault Act).

Martin filed a demand for arbitration with the Colorado Insurance Commission regarding USAA's denial of payment for, and the reasonableness and appropriateness of, the disputed services. By agreement of the parties, that arbitration is pending until the legal issues presented here are resolved.

Thereafter, USAA brought an action for declaratory judgment seeking a determination of whether the No Fault Act requires coverage for the costs of job search and placement services. USAA then filed a motion for summary judgment. The trial court, after considering the submissions of the parties, concluded that costs for job search and placement services are not required by the rehabilitation provisions of the No Fault Act. Accordingly, the trial court entered summary judgment in favor of USAA. This appeal followed.

Martin contends that the trial court erred by concluding that, as a matter of law, job search and placement services are not covered under the rehabilitative provisions of the No Fault Act and by granting summary judgment for USAA. We disagree.

Summary judgment is a drastic remedy and is never warranted except on a clear showing that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of establishing the lack of a triable factual issue, and all doubts as to the existence of such an issue must be resolved against the moving party. Further, the reviewing court may determine only whether a genuine issue exists and whether the law was applied correctly; it cannot decide disputed issues of material fact. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo. 1988).

A.

We disagree with Martin's contention that the costs of job search and placement

are covered by § 10–4–706(1)(c)(I)(A), C.R.S. (1987 Repl.Vol. 4A).

Initially, we note that the trial court provided no definition of the term job search and placement. Therefore, in reviewing the trial court's ruling, we will assume that the trial court adopted the definition of the term as proposed by USAA in its motion for summary judgment: Job search and placement services are those offered to one who has acquired skills necessary to be employed in the marketplace which identify potential employers, help the individual seek and obtain a job, or help the individual analyze potential employment situations.

Thus defined, we agree with the trial court that job search and placement services are not covered by § 10–4–706(1)(c)(I)(A) of the No Fault Statute.

A statute must be given effect according to the intent of the General Assembly. *Danielson v. Castle Meadows, Inc.*, 791 P.2d 1106 (Colo.1990). If the language of a statute is plain and its meaning is clear, it must be applied as written. *Heagney v. Schneider*, 677 P.2d 446 (Colo.App.1984). Words and phrases should be given effect according to their plain and ordinary meaning. *People v. District Court*, 713 P.2d 918 (Colo.1986).

Section 10–4–706, C.R.S. (1987 Repl.Vol. 4A) sets forth the required minimum coverages that an insurer must provide in order to be in compliance with the No Fault Act. With regard to rehabilitation, § 10–4–706(1)(c)(1)(A) requires an insurer to provide:

> Compensation without regard to fault for payment of the cost of *rehabilitation procedures or treatment* and *rehabilitative occupational training* necessary because of bodily injury arising out of the use or operation of a motor vehicle. (emphasis added)

Thus, under this provision, an insurer must pay for the costs of "rehabilitation procedures or treatment" and for "rehabilitative occupational training." Applying the principles of statutory construction, we conclude that costs of job search and placement assistance do not fall within either of these two categories.

■ First, we disagree with Martin's contention that assistance in job search and placement is a "procedure" which is compensable as a "rehabilitation procedure or treatment."

Section 10–4–706(1)(c)(I)(B), C.R.S. (1987 Repl.Vol. 4A) defines a "procedure or treatment" as follows:

> A healing art procedure or treatment which, for the purposes of this [No Fault Act], shall include any system, treatment, operation, diagnosis, prescription, or practice for the prevention, ascertainment, cure, relief, palliation, adjustment, or correction of any human disease, ailment, deformity, injury, or unhealthy or abnormal physical or mental condition, or any other nonmedical care or treatment rendered in accordance with a recognized religious method of healing.

■ Thus, to be compensable under the statute, a rehabilitation procedure must be in the healing arts and must be in the nature of a system, treatment, operation, diagnosis, prescription, or practice. Job search and placement assistance is not in the nature of the healing art procedures enumerated in this provision. Nor does it prevent, ascertain, cure, relieve, palliate, adjust, or correct an insured's physical or mental complaint. Thus, we conclude it is not a compensable procedure as contemplated by the General Assembly when it enacted this provision.

■ Secondly, we conclude that costs of job search and placement assistance are not compensable as "rehabilitative occupational training." Section 10–4–706(1)(c)(I)(A). To "rehabilitate" means to "restore to a former capacity; qualify again." *Webster's Third New International Dictionary* 1914 (1986). "Training" is defined as the "development of a particular skill or group of skills [or] instruction in an art, profession, or occupation." *Webster's Third New International Dictionary* 2424 (1986). "Rehabilitative occupational training," therefore, is instruction in, or development of, occupational skills so as to restore a person's capacity to work.

By its language, § 10–4–706(1)(c)(I)(A) requires only that the insurer cover training

**394**

costs and not costs of returning an insured who has been rehabilitated to work. *See Sulzer v. Mid–Century Insurance Co.,* 794 P.2d 1006 (Colo.1990) ("in requiring benefits for rehabilitative occupational training [the] General Assembly did not adopt the broad policies of inclusion that marked its treatment of vocational rehabilitation programs compensable under the Workmen's Compensation Act").

Thus, insofar as job search and placement assistance involves finding a job for one who has completed training, we conclude that such services are distinct from the training process and are not encompassed in the term "rehabilitative occupational training." *See Sulzer v. Mid–Century Insurance Co., supra* ("rehabilitative occupational training" does not include payment for subsistence costs during training).

**B.**

Martin argues, however, that because the facts of this case fall outside this definition, the trial court's legal determination is not conclusive here. Although she does not dispute that the services which Olson performed included identifying potential employers and helping Martin seek and obtain employment, she argues that at the time these services were rendered she had not yet acquired the skills necessary to be employed in the marketplace. She contends, therefore, that the services, rather than being distinct from the training process, were an integral part of her continuing occupational training and, thus, may be compensable as training under the statute.

Martin asserts that the following facts support her contention that these services were inseparable from the training process: Martin's head injuries resulted in mental impairment in cognitive functioning, incidental memory, attentional skills, and general reasoning abilities. These limitations, even after approximately six months in a cognitive rehabilitation program with Olson, rendered her unable to work in her field except in positions sufficiently structured so as to accommodate her impairment. Accordingly, Martin's rehabilitation program with Olson not only included assessment and administration of established programs to overcome her limitations, but

also required Olson to structure a job in the marketplace to be compatible with those functional limitations and, after Martin's placement in that position, required continuing rehabilitative training and counseling to assure that her reintegration was successful.

We agree with Martin that, to the extent that such services are an integral part of the rehabilitative occupational training, they may be compensable under § 10–4–706(1)(c). Thus, while we affirm the trial court's holding that job search and placement services, as defined herein, are not covered under the statute, we acknowledge that the factual issue as to whether the services in question were part of training may be appropriate for arbitration.

The judgment is affirmed.

STERNBERG, C.J., and NEY, J., concur.