**Linda DEAN and Chester Dean, Plaintiffs,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant.**

**Civ. A. No. 91–M–1051.**

United States District Court, D. Colorado.

Oct. 7, 1993.

Patric J. LeHouillier, Joseph Winston, Colorado Springs, CO, for plaintiff.

Robert A. Zupkus, Tod E. Fitzke, Zupkus & Ayd, P.C., Englewood, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

MATSCH, Chief Judge.

Linda and Chester Dean brought this action against Allstate Insurance Company (Allstate) for benefits under an insurance policy under the Colorado Automobile Reparations Act, C.R.S. § 10–4–701 et seq. (CARA, or "the Act") and for bad faith and outrageous conduct. Jurisdiction is based on 28 U.S.C. § 1332. The plaintiffs filed an amended complaint alleging anticipatory repudiation of the rehabilitation provision of Allstate's policy. Allstate filed a counterclaim for declaratory judgment that the rehabilitation benefits provision must be construed separately from the medical benefits section. The defendant filed motions for summary judgment.

Plaintiff Linda Dean was injured in an automobile accident on October 6, 1989 in Colorado Springs, resulting in hospitalization and medical treatment for cervical and spinal injuries. She was a passenger in the vehicle owned by Adelaide Brown, who had an insurance policy issued by Allstate, No. 038 031 144. Allstate was obligated to provide the minimum coverage required by C.R.S. §§ 10–4–706 and 10–4–707, while the vehicle was being used in Colorado. Therefore, under CARA, Mrs. Dean was an "insured" eligible to receive reasonable medical expenses, lost wages, essential services, and rehabilitation benefits. Linda Dean's husband, Chester Dean, is also a named plaintiff, although he was not involved in the car accident. After the accident, Mrs. Dean saw health care providers for treatment, and made claims for reimbursement. Under subsection 708, the insurer must pay claims within 30 days of receiving reasonable proof.

The Deans assert that they submitted the documentation requested, but that payments for lost wages and essential services were delayed or denied, and that Allstate has refused to pay any of Linda Dean's "medical rehabilitation" and travel expenses. Further, they allege that Mr. Dean has had to pay the doctor bills that Allstate refused to pay, that they were hounded by bill collectors, and that the defendant's outrageous conduct caused them to suffer extreme emotional distress.

Allstate's position is that all required payments were timely made after proper verification was received. It has policy limits of $50,000 for Mrs. Dean's medical treatment. The defendant contends that it rightfully declined payment of some lost wages claimed because it did not receive verification of employment from Linda's last employer or a letter from her doctor as to inability to work.

To resist a summary judgment motion, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), quoting Fed.R.Civ.P. 56(e). If the nonmoving party fails to make the required showing with respect to any essential element of its case, then the moving party is entitled to summary judgment "since a complete failure concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, at 323, 106 S.Ct. at 2552. The Deans did not make a sufficient showing of the factual support as to any of their claims.

■■■ Chester Dean does not have standing to assert any claims against Allstate: he has not suffered any injury, nor has he made a benefits claim under the policy. His only connection to the suit, and the only basis for naming him as a party, is his spousal relationship to Linda Dean. The expenses at the heart of this dispute are for *Linda's* medical and rehabilitation services, and for *Linda's* lost wages. Claims 1, 2, and 3 are for insurance benefits, attorney fees and treble damages, under C.R.S. § 10–4–708, but this section applies only to the "injured party," who is "the person entitled to such benefits"—and Chester is not that person. The bad faith non-payment claim by Mr. Dean also lacks legal support, since his only possible status as a party derives from alleged wrongful conduct to his wife. A claim for bad faith refusal to pay first-party benefits cannot extend to a person not a party to or a named insured under an insurance contract. *Carter v. American Mut. Fire Ins. Co.*, 279 S.C. 368,

307 S.E.2d 227 (1983). In a case with similar allegations, a court found that the spouse did not have the required interest in the benefits, nor the substantive right to tort relief. *Lowe v. American Medical Int'l,* 494 So.2d 413, 414 (Ala.1986). Indeed, even when a wife was covered as a dependent under the same policy as her spouse, she was found to be merely an incidental beneficiary regarding her husband's benefits, i.e. not a party—and even in a community property state. *Hatchwell v. Blue Shield of Cal.,* 198 Cal.App.3d 1027, 244 Cal.Rptr. 249 (1988).

The plaintiffs argue that Mr. Dean has joint liability for family expenses under C.R.S. § 14–6–110; but this statute applies to joint responsibility for such family expenses as the education of children. The plaintiffs also cite Section 10–4–708(2) to support the husband's third-party beneficiary standing: "Benefits provided under section 10–4–706(1)(b) and (1)(c) may be paid by the insurer directly to any person supplying necessary products, services, or accommodations to the person for whom benefits are required under section 10–4–706(1)(b) or (1)(c)." The common sense interpretation of this phrase is that the insurer *may* pay the doctor, hospital, physical therapist, etc. *directly.* It does not mean that the spouse of the injured, who has paid medical bills, *must* be re-paid directly. The plaintiffs' analogy to *Travelers v. Savio,* 706 P.2d 1258 (Colo.1985), stressing that Savio was a third party beneficiary to the insurance contract between his employer and Travelers, is unavailing. Savio was the *claimant,* injured on the job and thus covered by his employer's workers' compensation carrier. That case is entirely inapposite; and the plaintiffs can offer no authority in which the uninsured, uninjured spouse of a third party beneficiary had viable claims.

■ To argue for emotional distress, Mr. Dean quotes the Restatement (Second) of Torts too simplistically: "if he intentionally or recklessly causes severe emotional distress (a) to a member of such person's immediate family *who is present at the time,* whether or not such distress results in bodily harm...." *Id.* § 46, emphasis added in Brief. Plaintiffs contend that Chester Dean was present to witness the effects of the

defendant's non-payment on Mrs. Dean, but this second-hand distress is not what is contemplated under Colorado law. It is true that Colorado courts have held that bill collectors causing harassment is sufficient basis for a claim of reckless infliction of emotional distress. *Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753 (Colo.1970). *Rugg* is not an indirect harm to spouse case, however, but instead concerns very direct acts by the creditor against the debtor, including repeated phone calls and threats of garnishing wages. Allstate is not the bill collector, and Chester Dean is not the claimant. The insurer's implied promise of good faith applies only to the contracting party, or the intended beneficiary (here Linda Dean as a passenger). Chester Dean's claims under C.R.S. § 10–4–708, and claims of bad faith and exemplary damages must be dismissed. For similar reasons, the fifth claim, outrageous conduct, cannot stand; for a claim of outrageous conduct, the conduct of the actor must be directed at the person who suffers the harm. *Bradshaw v. Nicolay,* 765 P.2d 630, 632 (Colo.App.1988). Allstate never interacted with Mr. Dean in any way: he was neither a target nor a witness of any alleged outrageous conduct by Allstate. Similarly, the required threshold of outrageousness was not met in *Soto v. Royal Globe Ins. Corp.,* 184 Cal.App.3d 420, 229 Cal.Rptr. 192, 198 (1986), where a bad faith claim was asserted by family members of the insured. There, relatives sued a carrier for intentional infliction of emotional distress based on delayed workmen's compensation benefits, but the court dismissed.

■ Allstate has paid Linda Dean for lost wages and essential services for which she submitted reasonable proof. Mrs. Dean has failed to adequately document her further requests, and failed to refute that Allstate lacked sufficient information to process these claims. The adjuster, Dian Moser, stated that she repeatedly requested documentation of essential services, such as medical statements, but the essential services claim was not properly documented as of August 29, 1991. Linda Dean submitted only a calendar, handwritten by her mother-in-law, on hours the mother-in-law spent doing nursing

and housework tasks for Mrs. Dean, and without a specific dollar amount. Yet Allstate's adjuster sent $2,300 nonetheless. For documentation of wage loss, Allstate requested medical statements, employment releases, copies of check stubs, commission checks, original tax returns or W–2 statements. After a year's delay, what Mrs. Dean sent was insufficient: handwritten notes by herself (on wages), which do not cite a total dollar amount. To Allstate, these documents did not constitute reasonable proof.

Mrs. Dean wrote Allstate (letter dated April 4, 1991) that before the accident, she had worked for NuSkin part-time and had received $600 for 2 weeks; and in her 1989 tax return, under "Wages, salaries," she indicated "NuSkin $600.00." Ms. Moser's September 13, 1991 letter to the plaintiff states, "NuSkin could not verify the $600 Ms. Dean alleges she earned in 1989." Ex. A. Nevertheless, starting with this figure of $300/week gross, and presumably noting that Mrs. Dean sought lost wages for four weeks, Ms. Moser computed four weeks at $242.50 per week (take home pay), and sent a check for $970 to the plaintiff. Moser Depo. at 36. The adjuster explained: "This amount was sent as a compromise of the wage loss issue until [plaintiff's counsel] could provide me with proper documentation." Moser Affi. at ¶ 12. These conditional or interim payments are evidence of good faith effort on Allstate's part. Conversely, Mrs. Dean's failure to properly document lost wages and essential services has undermined her claims, and now—for a second time—she has failed to come forward with specific information, in response to the summary judgment motion.

■ Linda Dean's bad faith breach claim as to *late* payments also cannot survive summary judgment, because the plaintiff submitted no evidence of owed benefit payments unpaid after the statutory 30 days. Under **"Prompt payment of direct benefits"**, the statute provides that "(1) Payment of benefits under the coverages enumerated in section 10–4–706(1)(b) to (1)(e) shall be made on a monthly basis. Benefits for any period are overdue if not paid within thirty days after the insurer receives reasonable proof of the fact and amount of expenses incurred during

the period; except that an insurer may accumulate claims for periods not exceeding one month, and benefits are not overdue if paid within fifteen days after the period of accumulation." C.R.S. § 10–4–708. Linda Dean maintained that "many" payments were illegally delayed or denied, some for "many months," after she had provided sufficient documentation. However, the plaintiffs never submitted an itemized list of claims made, due dates, and precise dates of Allstate's reimbursements. Plaintiffs supply no facts, details, or verifications about late payments—not even in the affidavit from Mrs. Dean, which summarily states, "During the course of my treatment various medical bills were submitted to the Defendant which were not paid within the requisite time period as established by C.R.S. 10–4–708." The Tenth Circuit Court of Appeals has held that "generalized, conclusionary, unsubstantiated, nonpersonal affidavits are insufficient to successfully oppose a motion for summary judgment. [cite omitted]" *Stevens v. Barnard*, 512 F.2d 876, 879 (10th Cir.1975). Similarly, the plaintiffs' counsel merely states that medical repayments were late; but the court may not rely on the assertions of legal counsel for the existence of factual allegations. *Strothman v. Gefreh*, 808 F.2d 1399, 1400 (10th Cir. 1987).

The plaintiffs have submitted no evidence that Linda Dean has a valid outrageous conduct claim for delayed or denied payments. Linda's claim of emotional distress must be dismissed because it does not meet the four essential elements of such a claim: 1) the conduct is extreme and outrageous; 2) the conduct is intentional or reckless; 3) the conduct causes emotional distress; and 4) the distress is severe. *Malandris v. Merrill Lynch*, 703 F.2d 1152, 1158 (10th Cir.1981). The plaintiff must allege either a pattern of conduct *calculated* to cause emotional distress, or an isolated incident that is egregious.

■ Allstate is not required to pay Linda Dean's medical bills beyond the $50,000 already paid (and plaintiffs concede this amount), when they are merely recharacterized as rehabilitation benefits. Moreover, in their papers, plaintiffs virtually admit that

Mrs. Dean's current unpaid bills are *medical*, but demand that Allstate roll these over into the reimbursements for rehabilitation. This is contrary to Colorado law. It is not the case that the language of the two sub-sections is so vague that it creates a single pot of $100,000 from which the claimant may draw either type of reimbursement. Any statements in the Allstate adjuster's manual, *La Mano Buena*, regarding intertwining of medical and rehabilitation benefits are irrelevant to this statutory construction question. This court has reviewed the language, the structure, and the legislative history of the medical and rehabilitation benefits provisions in the No–Fault Act, and has determined that they must be construed and applied separately. *See Robertson v. Allstate* opinion, No. 92–M–522, 1993 WL 765595 (May 27, 1993), copy attached.

Mrs. Dean calls her current expenses "medical rehabilitative," but she has not provided evidence of rehabilitative treatment. Indeed, her current bills for which she is seeking reimbursement are all in the hospital, x-ray, surgical and psychological evaluation realm, which is defined in the provisions as medical treatment. The attorney/medical doctor Phil Pearson said, after reviewing her health care records, that in his medical and legal opinion, all of Mrs. Dean's expenses beyond the $50,000 limit have been for "purely medical treatment." Affi. at 3, Ex. D. The evidence on her current medical/physical condition and mental state shows that she has not been stabilized so as to be ready to progress to the rehabilitation phase of treatment—either physical therapy or vocational training. *Id.* Mrs. Dean's own language undermines her position: e.g., she simplistically notes that § 10–4–706 includes an additional "$50,000 for *rehabilitative* expenses," and that Allstate has refused to pay any of her "medical rehabilitation expenses," defined in a note: "This refers to medical rehabilitation as opposed to occupational training rehabilitation." Brief at 1, 2, n. 1, emphasis added. But the Act contains no such distinction, nor any such hybrid phrase or concept as "medical rehabilitation." In the health profession itself rehabilitation treatment has traditionally been considered sequential to medical care, during the period "between the bed and the job," and as a readaptation to daily living after a debilitating injury.

To try to prove that the treatment in dispute *is* rehabilitative, Mrs. Dean has submitted affidavits from three of her health care providers. Her psychiatrist, David M. Elwonger, M.D., stated that he treated her for the cure and relief of a psychiatric condition, which *thus* was rehabilitative. Affi., Ex. C. With similar abbreviated and cryptic logic, Carl Osborn, D.O. and Linda Nations, L.M.F.T., both testified that the treatment they gave Mrs. Dean was rehabilitative. Affidavits, Ex. D and E. All three affidavits employ the identical conclusory language: "The treatment was for the cure, relief and correction of Linda's ___ condition." But to survive a summary judgment motion, it is not sufficient for Mrs. Dean to submit affidavits from her health care providers that so state in a conclusory fashion, with no explanation of how her treatment is "rehabilitative." The affidavits in support of a motion or brief must meet certain criteria; legal conclusions on the fundamental issue are improper. *U.S. v. Britten*, 161 F.2d 921 (3rd Cir.1947). There is nothing in the record indicating *why* Mrs. Dean received a particular treatment, and without knowing the purpose one cannot classify the expense. None of Mrs. Dean's medical records was submitted. The non-moving party may not rely on general assertions and allegations; they are not sufficient to establish a triable issue of fact. *McVay v. Western Plains Serv.*, 823 F.2d 1395, 1398 (10th Cir.1987).

After an auto accident the same treatments may be either medical or rehabilitative, depending on their *timing* and *purpose*. For example, physical therapy for increased strength, movement, and flexibility of a patient's arm could be medical if part of postoperative recuperation; but the same physical therapy could be rehabilitative if it occurred two years later as part of job preparation. In practice, there is no bright line between medical and rehabilitative care, but if the legislature had intended to provide one amount of $100,000 for any kind of treatment, then it would not have needed to create two different types of benefits with two different rules for insurer compliance, in two

separate subsections. Mrs. Dean's position is contradicted by the very facts of her case, the language and history of the No–Fault Act, canons of construction, the practice of medicine, and rulings of Colorado courts.

■ Based on the findings above, Mrs. Dean's claim for bad faith breach cannot stand. An insured's right to payment is not absolute; rather, the No–Fault Act requires *reasonable* proof. Absent reasonable proof from the insured, claims cannot be overdue, and a breach of contract action is not possible. C.R.S. § 10–4–708. Not every submitted claim must be compensated; the insurer has a broad right to investigate claims. *Savio* at 1274. The insurer may deny invalid claims and those lacking supporting documentation, and this limits the insurer's duty of good faith. An insurer may consider its own interest, as long as it gives "at least equal consideration to the interests of the insured." *Potomac Ins. Co. v. Wilkens Co.*, 376 F.2d 425, 427–28 (10th Cir.1967). Accordingly, Mrs. Dean has no valid claims for bad faith, outrageous conduct, or exemplary damages; all lack factual support. For the question of whether the medical benefit payments were willfully delayed, the crucial documentation has not been supplied by the plaintiffs; so under Rule 56(e), Mrs. Dean has not raised a factual issue. Whether an insurer has breached its duty of good faith depends on whether the insurer had a reasonable basis for denial. *Trimble* at 1142. As this court has stated, "The test for bad faith denial is whether, under all the circumstances of the case, the facts show the absence of any reasonable basis for denying the claim." *Brown v. Allstate Ins. Co.*, 89–M–239 (D.C.Colo., Aug. 13, 1990). Allstate does have reasonable bases on which to deny each of Linda Dean's requests.

■ The defendant prevails on its second summary judgment motion because in Colorado transportation costs are not compensable under medical benefits. Linda Dean submitted a claim for reimbursement from Allstate for transportation costs (in the form of mileage) to her health care providers' offices. The amount sought by plaintiffs is unclear from the papers, though in oral argument plaintiff's counsel estimated it to be about $125 (.25 per mile for 500 miles). Transportation expenses are not mentioned in the Act, and this silence must be deemed intentional. Section 706(1)(b) says the compensation of $50,000 is "for payment of all reasonable and necessary *expenses for medical ... services*" (emphasis added). The No–Fault Act was never meant to be an all-inclusive scheme covering every imaginable expense associated with an auto accident. Instead, the required coverages are specifically limited to the categories provided or stated in the subsections. Although generally the declared legislative purpose (C.R.S. § 10–4–702) is to avoid inadequate compensation to auto accident victims, Colorado courts have not expanded the Act beyond its stated provisions.

■ Plaintiffs contend that transportation to doctors' offices *is* reasonable and necessary, but—using reduction to absurdity—one could also argue that clothes, shoes, and a watch are similarly necessary to go to a medical appointment. Yet the Act has never included payment for such incidental expenses, nor is there any "catch-all" provision to cover items beyond those enumerated. A series of venerable Supreme Court cases has repeated that absurd interpretive results are disfavored. *See, e.g. United States v. Ryan*, 284 U.S. 167, 175, 52 S.Ct. 65, 68, 76 L.Ed. 224 (1931). Where the language is plain and where the statute is silent, courts may not engage in gap-filling that second guesses the legislative intent; a statute must be applied as written. *Western Refining Corp. v. State Dept. of Revenue*, 767 P.2d 772 (Colo.App. 1988). The language of the Act is precise in delineating the limited scope of benefits, and the critical phrase is "expenses for *medical ... services.*" Further, reimbursement for "ambulance ... services" is specifically allowed, but if the legislature had intended to subsume transportation costs under the term "medical expenses," then ambulances need not be explicitly listed. When a statute specifies the situations to which it applies, in general it is held to exclude all other situations that are not specified. *Meyer v. Charnes*, 705 P.2d 979, 982 (Colo.App.1985). Finally, the fact that the statute gives no formula or rule for calculating mileage expenses to be paid—and no guidelines for

*which* trips are covered (to the pharmacy? to an out-of-state doctor?), or by what means (car? bus? limousine?)—further suggests that mileage expenses are excluded from medical benefits.

In addition, a significant body of Colorado case law directs strict construction of the Act in providing only those PIP benefits specifically identified. In *Sulzer v. Mid–Century Ins. Co.*, 794 P.2d 1006 (Colo.1990) the following repayments were held not covered: subsistence expenses during rehabilitation, living expenses before and during schooling, and moving and relocation expenses for a job after educational rehabilitation. The Colorado Supreme Court explained that in light of numerous possible alternatives open to the General Assembly, "it cannot be concluded that legislative silence with respect to subsistence benefits in relation to rehabilitative occupational training programs is equivalent to legislative oversight." *Sulzer*, at 1008. Likewise, silence with respect to transportation expenses is not an oversight. To answer the public policy argument, the court in *Sulzer* acknowledged that the plaintiffs' request for compensation for basic costs incidental to rehabilitation had inherent appeal, but noted that the insured could seek additional damages in a tort suit, and that such a conclusion of circumscribed benefits was not contrary to the remedial purposes of the Act. Since the No–Fault Act thoroughly enumerates details in many other areas, the omission of mileage expenses is not a co-incidence, but is a deliberate legislative decision, which should not be "corrected" by this court.

Upon the foregoing, it is

ORDERED that the defendant's motions for summary judgment are granted.

It is FURTHER ORDERED that plaintiffs' claims will be dismissed in their entirety. The defendant shall have judgment on its counterclaim that medical and rehabilitative expenses are separate and mutually exclusive benefits. The defendant will also be awarded its costs.