Robert **HALE**, an individual; David **Shull**, an individual; and **Exacte, LLC**, a Delaware Limited Liability Company, Plaintiffs,

v.

**MASTERSOFT INTERNATIONAL PTY. LTD.**, an Australian corporation; **Mastersoft Research Pty. Ltd.**, an Australian corporation; **NADIS, Inc.**, a Delaware corporation; **Cognito, Inc.**, a Delaware corporation; and John **Paterson**, an individual, Defendants.

**No. CIV. A.99–WY–2220–CB.**

United States District Court, D. Colorado.

April 10, 2000.

acknowledged that $6,844 of the $284,616 has been reimbursed by the ACOE to FEMA, leaving $277,772 still in dispute.

Kirk Bradford Holleyman, Kirk Holly-man, P.C., Denver, CO, for Plaintiff.

Richard L. Harring, William J. Brady, Grimshaw & Harring, Denver, CO, for Defendant.

## ORDER GRANTING PLAINTIFFS' MOTION FOR REMAND

BRIMMER, District Judge.

This matter came before the Court on the following motions: (1) Defendants' Motion to Dismiss or Alternatively, Motion to Quash, or Alternatively, Motion for Summary Judgment; and (2) Plaintiffs' Motion to Remand and for Attorney Fees. After reading the briefs, hearing oral arguments, and being fully advised in the premises, the Court **FINDS** and **ORDERS** as follows:

### Background

This case arose out of a business deal gone bad. Plaintiffs David Hale and David Shull are member/managers of Plaintiff ExactE, LLC. Messrs. Hale and Shull are Colorado residents while ExactE, LLC is a Delaware limited liability company with its principal place of business in Colorado. Defendants MasterSoft International Pty. Ltd. ("MSI") and MasterSoft Research, Pty. Ltd. ("MSR") are Australian corporations each having its principal place of business in Australia. Defendant NADIS, a Delaware corporation, is a wholly owned subsidiary of MSR with business office in New York. Defendant Cognito is a Delaware corporation whose principal place of business is in dispute. Defendant Paterson, an Australian citizen, is the CEO of MSR, MSI, and NADIS, and is a director of Cognito.

While the details of the parties' business negotiations and plans are somewhat complex, the general goal was to create a U.S. based, Internet-focused, information quality solutions company. The Plaintiffs entered into a contract with MSR to develop the new company. Under the contract, MSR was obligated to make payments to Plaintiffs as consideration for contributions of time and expertise. In Plaintiffs' view, the viability of the planned company rested heavily on the financial strength of the MasterSoft group companies. Plaintiffs contend that Defendants and their agents provided Plaintiffs with false and misleading representations regarding the financial condition of the Defendant companies. On September 24, 1999, Plaintiffs brought suit in Colorado state court for fraud, exemplary damages, negligent misrepresentation, breach of contract, and violation of the Colorado Organized Crime Control Act. On November 17, 1999, Defendants removed pursuant to 28 U.S.C. § 1441.

### Analysis

#### 1. Plaintiffs' Motion to Remand

■ In their notice of removal, Defendants asserted that this Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), which provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between—(1) citizens of different states; [or] (2) citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a) (West 1993). It is elementary that § 1332 provides jurisdiction only where there is complete diversity, that is, where all plaintiffs are of different citizenship than all defendants. *See Strawbridge v. Curtiss*, 3 Cranch 267, 2 L.Ed. 435 (1806); *Depex Reina 9 Partnership v. Texas Int'l Petroleum Corp.*, 897 F.2d 461, 463 (10th Cir.1990). In support of their motion for remand, Plaintiffs argue that complete diversity is lacking because Plaintiff ExactE, a Delaware limited liability company, and Defendants Cognito and NADIS, Delaware corporations, are all Delaware citizens. Plaintiffs also contend that complete diversity is destroyed by common Colorado citizenship between themselves and Cognito, which Plaintiffs assert is a Colorado citizen by virtue of the fact that it has its principal place of business in Colorado. Defendants, on the other hand, argue that NADIS and Cognito were fraudulently joined to defeat diversity jurisdiction and should be dismissed. As to Cognito, Defendants argue that Congito transacted no business in Colora-

do, lacked minimum contacts with Colorado, and, hence, was not subject to personal jurisdiction in Colorado and was therefore fraudulently joined.

■■■ For the purposes of § 1332, a natural person is a citizen of the state in which they are domiciled. *See Walden v. Broce Constr. Co.,* 357 F.2d 242, 245 (10th Cir.1966). Here, there is no dispute that Robert Hale and David Shull are domiciliaries and citizens of Colorado. A corporation, for diversity jurisdiction purposes, is a citizen of both its state of incorporation and the state where it has its principal place of business, *see* 28 U.S.C. § 1332(c). Both sides to this litigation incorrectly assume, however, that the same holds true for limited liability companies. The Tenth Circuit has not directly determined the citizenship of limited liability companies for purposes of diversity jurisdiction. Other courts, however, have uniformly held that a limited liability company is a citizen of the states of which its members are citizens, and is not a citizen of the state in which it was organized unless one of its members is a citizen of that state. *See Cosgrove v. Bartolotta,* 150 F.3d 729, 731 (7th Cir.1998); *Keith v. Black Diamond Advisors, Inc.,* 48 F.Supp.2d 326, 329–30 (S.D.N.Y.1999); *JMTR Enter., LLC v. Duchin,* 42 F.Supp.2d 87, 93–94 (D.Mass. 1999); *International Flavors & Textures, LLC v. Gardner,* 966 F.Supp. 552, 554–55 (W.D.Mich.1997). Because ExactE's members, Messrs. Hale and Shull, are Colorado citizens, ExactE is a citizen only of Colorado and not Delaware. Consequently, ExactE's status as a Delaware limited liability company does not destroy diversity between it and Delaware corporations Cognito and NADIS. *See JMTR Enter.,* 42 F.Supp.2d at 94 (holding that Rhode Island LLC plaintiff with Massachusetts members was diverse from defendants comprised of two Rhode Island corporations and a Rhode Island individual).

■■■ Complete diversity would be destroyed, however, if, as Plaintiffs contend, Cognito's principal place of business is Colorado. *See* 28 U.S.C. § 1332(c) (providing that a corporation is a citizen of the state in which its principal place of business is located). Courts have developed various tests for identifying a corporation's principal place of business for the purposes of § 1332. Under the "nerve center" test, a corporation's principal place is the state where its executive headquarters are located. *See Metropolitan Life Ins. Co. v. Estate of Cammon,* 929 F.2d 1220, 1223 (7th Cir.1991). In contrast, the "corporate activities" test looks to where the bulk of the corporation's business is conducted. *See Danjaq, S.A. v. Pathe Communications Corp.,* 979 F.2d 772, 776 (9th Cir.1992). The Tenth Circuit, however, has adopted the "total activity" approach, a hybrid of the other two tests which " 'considers a variety of factors, such as the location of the corporation's nerve center, administrative offices, production facilities, employees, etc., and it balances these factors in light of the facts of each case.' " *Amoco Rocmount Co. v. Anschutz Corp.,* 7 F.3d 909, 915 (10th Cir.1993) (quoting *White v. Halstead Indus., Inc.,* 750 F.Supp. 395, 398 (E.D.Ark.1990)). In the Tenth Circuit, "the determination of a corporation's principal place of business does not hinge on one particular facet of corporate operations, but on the total activity of the company considered as a whole." *Id.*

■■■ Viewing Cognito's activities in their totality, the Court concludes that Colorado is Cognito's principal place of business for the purposes of diversity jurisdiction. Of particular importance is that fact that Cognito had the most visible presence in Colorado, had the most contact with the public in Colorado, and generally presented itself as a Colorado resident. *See Industrial Tectonics, Inc. v. Aero Alloy,* 912 F.2d 1090, 1094 (9th Cir.1990) (noting importance of the public contact in determining principal place of business); *North Star Hotels Corp. v. Mid–City Hotel Assoc.,* 696 F.Supp. 1265, 1271–72 (D.Minn.1988) (same). For example, the cover of the business plan prepared for the company

lists an Evergreen, Colorado address and telephone number for Cognito. (Shull Supplemental Aff. Ex. 1.) Further, business cards and a web site were prepared which presented the same Evergreen, Colorado address for Cognito. (Shull Aff. ¶ 5(D), Ex. 9.) While Cognito's activities were limited, the majority, if not the entirety, of those activities were in Colorado. Specifically, the Boulder, Colorado office of the law firm of Cooley Godward, LLP was retained to form Cognito and prepare its corporate documents. (*Id.* ¶ 5(A).) Moreover, Mr. Shull, acting on behalf of Cognito, and with the knowledge and consent of Mr. Paterson, met with representatives of Silicon Valley Bank in Boulder, Colorado to arrange financing for Cognito. (*Id.* ¶ 5(E), Ex. 10.) Mr. Shull also met with partners and other vendors in Colorado to arrange for services to be provided to Cognito. (*Id.* ¶ 5(G).) Mr. Paterson acknowledged that Mr. Shull's actions were taken on behalf of Cognito. (*Id.* Ex. 10.) The evidence also shows that the parties intended for Cognito's future activities to take place primarily in Colorado. The business plan prepared for Cognito contemplates that "[w]hile one or two specialized consultants may be located [sic] remote offices, most employees will be based out of Denver." (*Id.*)

For his part, Mr. Paterson denies that Cognito's principal place of business was in Colorado, and instead insists that it was in New South Wales, Australia. (Paterson Aff. ¶¶ 5, 7.) However, Mr. Paterson does not describe or provide evidence of any business activities conducted by Cognito in Australia. Defendants further contend that Plaintiffs' actions on behalf of Congito were not authorized; a contention belied by Mr. Paterson's own admission that Plaintiffs' meetings with bankers and vendors were conducted on behalf of Cognito. (Shull Aff. Ex. 10.) Absent any evidence that Cognito conducted activities in a location other than Colorado, the Court is compelled to conclude that Colorado was Cognito's principal place of business. Consequently, Plaintiffs are not diverse

from Cognito and § 1332 does not provide a basis for jurisdiction if Cognito is a proper party to this lawsuit.

**b. Fraudulent Joinder**

 Defendants insist that Cognito should not be considered in determining the Court's diversity jurisdiction because, in their view, Cognito was fraudulently joined for the sole purpose of defeating federal jurisdiction. Defendants' burden in making this charge is a heavy one:

> In order to prove fraudulent joinder, the removing party must show either that there is no possibility that the plaintiff would be able to establish a cause of action against the resident defendant in state court; or that there has been outright fraud in plaintiff's representations as to jurisdictional facts. If there is even a possibility that the state court would find that the complaint states a cause of action against the resident defendant, the federal court must find that the joinder was proper and remand the case to state court.

*Frontier Airlines, Inc. v. United Air Lines, Inc.*, 758 F.Supp. 1399, 1404 (D.Colo.1989) (internal citations omitted). The removing party claiming fraudulent joinder must "prove the non-liability of the defendant as a matter of fact or law." *Blackwood v. Thomas*, 855 F.Supp. 1205, 1207 (D.Colo.1994). While an allegation of fraudulent joinder permits the Court to pierce the pleadings, it is not proper for the Court to pre-try issues of liability on a motion for remand. *See id.*

 Here, among other causes of action, Plaintiffs assert a breach of contract claim against Cognito, asserting that Cognito assumed the rights and obligations of MRI under the ExactE–MRI contract. As evidence of Cognito's assumption of MRI's contractual obligations, Plaintiffs provide evidence that the parties planned for Mastersoft Research to be "rolled up" into Cognito, and that Mastersoft did in fact become a subsidiary of Cognito.

(Shull Supplemental Aff. Ex. 9; Shull Aff. ¶ 6.) Plaintiffs also submit a letter by Mr. Paterson to Messrs. Hale and Shull, written after the deal turned sour, in which Mr. Paterson, in his role as CEO of Cognito, indicates that the vice president of Cognito would be authorized to make payment to Hale and Shull, apparently for the work performed under the ExactE–MRI contract. (Shull Aff. Ex 7.) Defendant does not directly attack the legal basis of Plaintiffs' breach of contract claim, and instead relies on its argument that Cognito is not subject to personal jurisdiction in Colorado; an argument the Court has implicitly rejected in finding that Colorado was Congito's principal place of business.

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he had established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Consequently, a state may assert personal jurisdiction over a person only if "he have certain minimum contacts [with the jurisdiction] ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). Consistent with the "minimum contacts" standard, a state may assert specific jurisdiction over a defendant "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King,* 471 U.S. at 472, 105 S.Ct. 2174 (internal citations omitted). As described above, Cognito, acting through Plaintiffs as its agents, pursued financing and other business relationships with Colorado residents. Plaintiffs' breach of contract action is based on their demand to be paid for those very activities rendered by Plaintiffs within Colorado and performed on behalf of Cognito. In light of Cognito's

activities within Colorado, and the close relationship between those activities and this lawsuit, a Colorado court could conclude that Cognito established sufficient minimum contacts with Colorado to subject itself to personal jurisdiction there. Nor have Defendants demonstrated that requiring Cognito to defend this lawsuit in Colorado would be so unreasonable as to violate "fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. 154.

In sum, Defendants have failed to persuade the Court that there is no possibility that a state court could find that Plaintiffs could·state a claim against Cognito. Thus, Cognito was not fraudulently joined, Cognito's presence in the case precludes the Court's exercise of jurisdiction pursuant to § 1332, and the case must be remanded.

**2. Plaintiffs' Motion for Attorney Fees and Costs**

 Plaintiffs seek attorney fees and costs incurred because of Defendants' improper removal. Where a case is remanded after being improperly removed, the court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c) (West 1994). The central issue in deciding whether fees should be awarded is the propriety of the removal, and a finding of bad faith is not a prerequisite to an award of fees. *See Excell, Inc. v. Sterling Boiler & Mechanical, Inc.,* 106 F.3d 318, 322 (10th Cir.1997). However, the mere fact that removal was improper does not automatically entitle the plaintiff to attorney fees. *See Valdes v. Wal–Mart Stores, Inc.,* 199 F.3d 290, 292 (5th Cir.2000). Rather, the court must objectively evaluate the merits of the defendant's removal action at the time it was filed. *See id.* at 292–93. While fee awards are within the discretion of the trial court, *see Suder v. Blue Circle, Inc.,* 116 F.3d 1351, 1352 (10th Cir.1997), general standards have emerged. Motions

for attorney fees are typically denied where the court determines that the removal was based on a colorable argument. *See Rivers v. International Matex Tank Terminal,* 864 F.Supp. 556, 561 (E.D.La. 1994); *Santiago v. Barre Nat'l, Inc.,* 795 F.Supp. 508, 513 (D.Mass.1992); *McCann v. Alaska Airlines, Inc.,* 758 F.Supp. 559, 567 (N.D.Cal.1991). Here, the Court concludes Defendants had a colorable argument that Cognito was fraudulently joined because the limited nature of Cognito's business activities introduced some degree of uncertainty regarding its contacts with Colorado. Therefore, Plaintiffs' motion for attorney fees must be **DENIED.**

### Conclusion

Cognito's principal place of business is in Colorado, thereby destroying complete diversity between Cognito and Plaintiffs. Cognito was not fraudulently joined because Defendants have failed to prove that there is no possibility that a Colorado court could find that Plaintiffs can state a claim against Cognito. Consequently, the Court finds itself without subject matter jurisdiction over this case. Where, after removal, a district court finds that it lacks subject matter jurisdiction, it must remand the case to state court. *See* 28 U.S.C. § 1447(c). Thus, in accordance with § 1447(c), Plaintiffs' motion to remand is hereby **GRANTED,** and the case is hereby **REMANDED** to the District Court for Douglas County, Colorado. Plaintiffs' Motion for attorney fees is hereby **DENIED.** All other pending motions are **DENIED AS MOOT.**