**ESTATE of April HILL, Scott Hill, personal representative, Scott Hill, as Conservator of the Estate of Katelyn Hill, and Scott Hill, individually, Plaintiffs,**

v.

**ALLSTATE INSURANCE COMPANY, Liz Marchand, Merastar Insurance Company, and Prudential Insurance Company of America, Defendants.**

No. CIV. 04–RB–0865(CBS).

United States District Court, D. Colorado.

Dec. 13, 2004.

---

11. This is a *fortiori* for the defendant who is an attorney.

Kenneth Alan Senn, Titusville, FL, for plaintiffs.

John M. Vaught, Terence M. Ridley, Michael D. Alper, Wheeler Trigg Kennedy LLP, Denver, CO, for defendants Allstate Ins. Co., Liz Marchand.

Michael K. Alston, Esq., Chattanooga, TN.

Alan E. Popkin, David W. Sobelman, Husch & Eppenberger, LLC, St. Louis, MO, Gregory Scot Tamkin, Marian Elizabeth Lokey, Dorsey & Whitney, LLP, Denver, CO, Michael K. Alston, Husch & Eppenberger, LLC, Chattanooga, TN, for defendant Merastar Ins. Co.

Clifton J. Latiolais, Jr., Campbell, Latiolais & Ruebel, PC, Denver, CO, for Prudential Ins. Co. of America.

## ORDER DENYING PLAINTIFFS' MOTION TO REMAND AND GRANTING DEFENDANTS' MOTION TO DISMISS

BLACKBURN, District Judge.

The matters before me are (1) Plaintiffs' Motion Pursuant to 28 U.S.C. § 1447(c) for Remand to State Court [# 18], filed May 28, 2004; and (2) Defendants Allstate Insurance Company and Liz Marchand's Amended Motion to Dismiss Plaintiffs' First Amended Complaint [# 49], filed October 4, 2004. I putatively have jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) (diversity of citizenship). I deny the motion to remand and grant the motion to dismiss.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case implicates the personal injury protection ("PIP") provisions of the now abrogated Colorado Auto Accident Reparations Act, commonly known as the "No–Fault Act," part 7 of article 4 of title 10, C.R.S. (repealed by Laws 1997, H.B. 97–1209, § 8, as amended by Laws 2001, ch. 165, § 6 & Laws 2002, ch. 189, § 1, effective July 1, 2003). Under the No–Fault Act, automobile insurance policies issued in this state must contain coverage for certain types of risks. Specifically, the statute requires policies to provide

Compensation without regard to fault, up to a limit of fifty thousand dollars per person for any one accident, for payment of all reasonable and necessary medical expenses for medical ... services, and nonmedical remedial care and treatment rendered in the accident for bodily injury arising out of the use or operation of a motor vehicle; ..."

§ 10–4–706(1)(b), C.R.S. This is the minimum PIP benefit that must be included in every policy. In addition, an insured may purchase optional enhanced PIP coverage for a higher premium. *Thompson v. Budget Rent–A–Car Systems, Inc.*, 940 P.2d 987, 990 (Colo.App.1996). In this regard, the Act requires that

> Every insurer shall offer for inclusion in a complying policy, in addition to the coverages in section 10–4–706, at the option of the named insured:
>
> (I) Compensation of all expenses of the type described in section 10–4–706(1)(b) without dollar or time limitations; or
>
> (II) Compensation of all expenses of the type described in section 10–4–706(1)(b) without dollar or time limitations and payment of benefits equivalent to eighty-five percent of loss of gross income per week from work the injured person would have performed had such injured person not been injured during the period commencing on the day after the date of the accident without dollar or time limitations.

§ 10–4–710(2)(a), C.R.S. When this optional coverage is not offered to the insured, "additional coverage in conformity with the required offer is incorporated into the agreement by operation of law." *Thompson*, 940 P.2d at 990.

On June 25, 2002, plaintiff Scott Hill's wife, April, was killed and his minor daughter, Katelyn, permanently disabled in a car accident. (First Am. Compl. at 1–2, ¶¶ 1 & 3.) At the time of the accident,

April was insured under a policy issued by defendant Allstate Insurance Company ("Allstate"), and sold by Allstate's agent, defendant Liz Marchand ("Marchand"), to April and her former husband, John Paul (collectively, "the Pauls"). (*Id.* at 4, ¶ 9; *see also* Def. Motion to Dismiss App., Exh. 1.) Plaintiffs claim Allstate and Marchand failed to inform the Pauls of the availability of enhanced PIP benefits. (First Am. Compl. at 4–5, ¶¶ 11–12.) They therefore filed suit in Colorado state district court, seeking reformation of the policy and alleging claims against Allstate for breach of contract and bad faith, as well as against Marchand for breach of contract, tortious interference with contract and prospective business advantage, negligence, negligent misrepresentation, and breach of fiduciary duty.[1]

Defendants removed the case to federal district court, contending the Marchand had been fraudulently joined solely for the purpose of defeating federal diversity jurisdiction. While plaintiffs' motion to remand was still pending, Allstate and Marchand filed a motion to dismiss under Rule 12(b)(6).

## II. MOTION TO REMAND

As Marchand is a Colorado resident, her presence in this lawsuit destroys federal diversity jurisdiction. Defendants, however, claim that Marchand was fraudulently joined solely to defeat removal to the federal court. Plaintiffs argue that Marchand's joinder was not fraudulent because they have asserted viable claims against her. They therefore move to remand the case to the Colorado state district court.

■■ To prove fraudulent joinder, the removing party must show either that there is no-possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant or out-

right fraud in the pleading of jurisdictional facts. *Hale v. MasterSoft International Pty., Ltd.,* 93 F.Supp.2d 1108, 1113 (D.Colo.2000); *Frontier Airlines, Inc. v. United Air Lines, Inc.,* 758 F.Supp. 1399, 1404 (D.Colo.1989). The burden of proving fraudulent joinder is extremely heavy. *Hale,* 93 F.Supp.2d at 1113; *Board of County Commissioners of County of Mesa v. Atlantic Fidelity, Inc.,* 930 F.Supp. 499, 500 (D.Colo.1996). The removing party must "prove the non-liability of the [non-diverse] defendant as a matter of fact or law." *Blackwood v. Thomas,* 855 F.Supp. 1205, 1207 (D.Colo.1994). "If there is even a possibility that the state court would find that the complaint states a cause of action against the resident defendant, the federal court must find that the joinder was proper and remand the case to state court." *Frontier Airlines,* 758 F.Supp. at 1404. I may look to evidence outside the pleadings in making this determination, although I may not conduct a full-scale evidentiary hearing. *Hale,* 93 F.Supp.2d at 1113; *Blackwood,* 855 F.Supp. at 1207. Rather, I must view the facts in the light most favorable to the non-removing party and resolve all disputed questions of fact and uncertain legal issues in its favor. *Frontier Airlines,* 758 F.Supp. at 1405.

■■■ Even under this stringent standard, I find that none of plaintiffs' causes of action asserts a viable claim for relief against Marchand. All plaintiffs' claims emanate from their contention that Marchand, despite her agreement to procure an automobile insurance policy for the Pauls that complied with Colorado law, failed to advise them of the availability of enhanced PIP benefits. (*Id.* at 5, ¶ 14 & at 13, ¶ 59.) Under Colorado law, "an insurance broker or agent who agrees to obtain a particular form of insurance coverage for the person seeking such insur-

---

1. Plaintiffs claims against the other two de- fendants are not at issue here.

ance has a legal duty to obtain such coverage or to notify the person of his failure or inability to do so." *Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc.,* 739 P.2d 239, 243 (Colo.1987); *see also Golden Rule Insurance Corp. v. Greenfield,* 786 F.Supp. 914, 916 (D.Colo.1992); *Terry v. Avemco Insurance Co.,* 663 F.Supp. 39, 41–42 (D.Colo. 1987). An agent who fails to do so may be liable either for breach of contract, *see Mayhew v. Glazier,* 68 Colo. 350, 189 P. 843, 844–46 (1920), or negligence, *see Terry,* 663 F.Supp. at 41–42; *Bayly, Martin & Fay,* 739 P.2d at 242–43.

■ Although such a cause of action exists under Colorado law, the allegations of plaintiffs' complaint are insufficient to bring their claims within its scope. Pursuant to these precedents, an agent may be liable for failure to procure an insurance contract

> not only when there is a failure to obtain insurance coverage on an express order from the insured, but also where the agent has simply falsely informed the insured that coverage was obtained where it in fact was not, or advised the insured that coverage would be reinstated after its cancellation, when it was not, if, in their prior dealings, the agent customarily took care of a customer's insurance needs without consulting the insured and without further express orders from the insured, but the agent failed to do so in a particular instance, or where the type of coverage or the amount procured was less than that desired by the insured.

4 COUCH ON INSURANCE § 46:46 (3rd ed.) (footnotes omitted). On the other hand, "[a]bsent some allegation that an insurance agent did something to contribute to a lack of coverage or denial by an insurer, the agent will not be held liable simply because it exists as an agent." *Id.* Stated differently, "[t]he general duty of the insurer's agent to the insured is to refrain from affirmative fraud, not to watch out for all rights of the insured and inform the latter of them. Absent a special relationship between the insured and the insurer's agent, an insurer's agent has no duty to affirmatively advise or warn his or her customer of provisions contained in an insurance policy, ...." *Id.,* § 55:5 (footnotes omitted); *see also Montano v. Allstate Indemnity,* 2000 WL 525592 at *2 (10th Cir. Apr.14, 2000) (under similar provision of New Mexico law, agent does not have general duty to provide policy advice to insured).

■ Thus, in each of the cases recognizing the duty plaintiffs seek to impose on Marchand, the insurance agent was specifically requested to procure a particular type of insurance or specifically indicated that she would do so. *See Terry,* 663 F.Supp. at 42 (insurance company, acting as broker, failed to procure full hull coverage on aircraft as requested by insured); *Bayly, Martin & Fay,* 739 P.2d at 241 (plaintiff specifically sought liquor liability insurance, which agent assured him he would obtain); *Mayhew,* 189 P. at 844–45 (agent agreed to secure hail insurance on plaintiff's behalf but failed to forward application to insurance company); *see also Golden Rule Insurance Corp.,* 786 F.Supp. at 916 (insurance agent helped plaintiff complete insurance application).[2] The af-

---

2. These precedents are consistent with the interpretation of this doctrine in other jurisdictions. *See, e.g., Amoco Production Co. v. Hydroblast Corp.,* 90 F.Supp.2d 727, 733–34 (N.D.Tex.1999), *aff'd,* 226 F.3d 642 (5th Cir. 2000); *Southern Scales, Inc. v. Aronov Insurance, Inc.,* 608 So.2d 724, 725–26 (Ala.1992); *Chases's Cigar Store, Inc. v. Stam Agency, Inc.* 281 A.D.2d 911, 722 N.Y.S.2d 320, 321 (App. Div.2001); *Sledge v. Mullin,* 927 S.W.2d 89, 92–93 (Tex.App.—Fort Worth 1996, no writ); *Sinex v. Wallis,* 611 A.2d 31, 33–34 (Del.Super.1991); *Jones v. Grewe,* 189 Cal.App.3d 950, 234 Cal.Rptr. 717, 719–21 (1987).

firmative request for such assistance creates the special relationship giving rise to the agent's duty of reasonable care to procure the insurance thus requested. *See* 4 COUCH ON INSURANCE § 46:46 ("[W]here an insurance agent or broker promises, or gives some affirmative assurance, that he or she will procure or renew a policy of insurance under circumstances which lull the insured into the belief that such insurance has been effect, the law will impose upon the broker or agent the obligation to perform the duty which the broker or agent has thus assumed."); *see also Grynberg v. Agri Tech, Inc.*, 10 P.3d 1267, 1271 & n. 4 (Colo.2000) (noting that duty recognized in *Bayly, Martin & Fay* arose from special relationship between agent and insured).

 In contrast, plaintiffs make no allegation that the Pauls specifically requested extended PIP benefits or that Marchand specifically told them she would procure a policy containing extended PIP benefits. Instead, plaintiffs challenge her failure to advise the Pauls of the availability of such additional benefits. Such nonfeasance is not actionable against the insurance agent. *See* § 10–4–710(2)(a), C.R.S. (requiring that "[e]very *insurer* shall offer" the enhanced benefits contemplated by that section) (emphasis added).[3] Nor does plaintiffs' allegation that Marchand agreed to procure a policy in compliance with Colorado law save their claim.

The No–Fault Act does not require that an automobile insurance policy include enhanced PIP benefits, only that such be offered to the insured as an option. The policy the Pauls received thus complied with Colorado law, and, in the absence of a more specific allegation that enhanced PIP benefits were requested or even discussed, Marchand cannot be held liable for the policy's failure to include them.

 Plaintiffs' other claims fare no better. Without a special relationship between Marchand and the Pauls, she owed no fiduciary duty to them. *See Cary v. United of Omaha Life Insurance Co.*, 68 P.3d 462, 466 (Colo.2003). Nor does her failure to inform the Pauls of the availability of enhanced PIP coverage support a claim for negligent misrepresentation. Under Colorado law, one is liable for negligent misrepresentation only when she " 'supplies false information for the guidance of others.' " *Broadview Financial, Inc. v. Entech Management Services Corp.*, 859 F.Supp. 444, 453 (D.Colo.1994) (quoting RESTATEMENT (SECOND) OF TORTS § 552 (1965)). Marchand's silence on the issue therefore cannot be construed as a misrepresentation.[4] At best, plaintiffs' claim asserts that Marchand agreed to procure an insurance policy that complied with Colorado law. However, "the non-performance of a promise to do something at a future time" is insufficient to state a

---

3. Plaintiffs correctly point out that no Colorado court has ever interpreted this provision to bar a cause of action against the agent. However, the first principle of statutory construction requires me to give effect to the statute's intent as primarily expressed in its language. *Allstate Insurance Co. v. Parfrey*, 830 P.2d 905, 912 (Colo.1992). That language places the duty to inform fully and solely on the insurance company.

4. Although I have found no Colorado court specifically so holding, based on the law as interpreted in other states, I do not discount

the possibility that a claim for misrepresentation based on silence might stand if the defendant has a duty to speak. *See BancOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089, 1105 (10th Cir.1999) (applying Missouri law); *Wilson v. Meeks*, 98 F.3d 1247, 1254 (10th Cir.1996) (applying Kansas law); *Thrifty Rent–A–Car Systems, Inc. v. Pentastar Services, Inc.*, 24 F.3d 1190, 1195 (10th Cir. 1994) (applying Oklahoma law). However, as found herein, the duty to inform an insured of the availability of enhanced PIP benefits lies exclusively with the insurer.

claim for negligent misrepresentation under Colorado law. *Id.*

Finally, plaintiffs have no viable claim against Marchand for tortiously interfering with the contract of insurance between Allstate and the Pauls. In general, "an agent who, while acting within the scope of official duties, causes his or her principal to breach a contract generally will not be held liable for tortious interference with that contract." *W.O. Brisben Companies, Inc. v. Krystkowiak,* 66 P.3d 133, 136 (Colo.App.2002), *aff'd,* 90 P.3d 859 (Colo.2004). However, the agent may be liable for interference if she acts "improperly," that is, "motivated solely by the desire to harm one of the contracting parties or to interfere in the contractual relations between the parties." *Id.* at 137. Plaintiffs' allegations come nowhere near this exacting standard. Rather, they allege merely that Marchand had some unspecified "pecuniary and/or personal interest" in not informing the Pauls of the availability of enhanced PIP benefits. (*See* First Am. Compl. at 5, ¶ 15.) This contention is not sufficient to suggest that Marchand desired to harm either the Pauls or Allstate or specifically intended to interfere with their contract.

Accordingly, I find that plaintiffs have asserted no set of facts to support a viable claim against Marchand and therefore that her joinder was fraudulent in law. Accordingly, the motion to remand is denied.

### III. MOTION TO DISMISS

Allstate and Marchand also have filed a motion to dismiss for failure to state a claim on which relief may be granted. Given that I have already found that plaintiffs have no viable claim against Marchand, the motion is granted with respect to those claims. As for Allstate, it moves to dismiss plaintiffs' claims for reformation, breach of contract, and bad faith insofar as they are brought by plaintiff individually and in his capacity as the personal representative of April's estate.[5]

Plaintiffs' first, second, and third claims for relief are premised on the notion that the Allstate insurance policy impermissibly terminated "essential services" benefits on the death of the insured, in contravention of the No–Fault Act. (*See* Def. Motion App., Exh. 1 at 14 (Limits of Liability, ¶ 4(b)).) Under the Act, an insurance policy must provide minimum levels of coverage for lost wages and "essential services." *See* § 10–4–706(1)(d)(I), C.R.S. (requiring payment for "expenses not exceeding twenty-five dollars per day which are reasonably incurred for essential services in lieu of those the injured person would have performed without income during the period commencing the day after the date of the accident and not exceeding fifty-two additional weeks"). However, the Act further provides that "[d]isability benefits specified in this paragraph (d) shall not accrue following the death of the injured person." § 10–4–706(1)(d)(II), C.R.S.

Plaintiff reads this limitation as applying only to the lost wage provisions of section 10–4–706(1)(d)(I). I cannot accept this strained interpretation. Although no Colorado court has specifically addressed this provision of the Act, the plain language of the statute is dispositive. *See Allstate Insurance Co. v. Parfrey,* 830 P.2d 905, 912 (Colo.1992). "Disability benefits" are benefits available as a result of disability. Such a definition is broad enough to encompass both lost wages and essential services. Moreover, the Act refers to the disability benefits that termi-

---

**5.** Allstate's 12(b)(6) motion does not reach the claims filed by Scott Hill as conservator of the estate of Katelyn Hill.

nate upon death as those "specified in this paragraph (d)" in the whole, without any attempt to limit its reach to only one type of those benefits. The Colorado Supreme Court's opinion in *Sulzer v. Mid–Century Insurance Co.*, 794 P.2d 1006 (Colo.1990), on which plaintiffs rely, does not change my conclusion. In that case, the Court merely noted in dicta that lost wages were a disability benefit under the No–Fault Act. *Id.* at 1009. It did not further state that essential services were not also a disability benefit, and indeed, had no occasion to address that portion of the Act at all. I therefore find that the Allstate policy complied with the requirements of the No–Fault Act with respect to essential services benefits and is not subject to reformation on that ground. Because the contract is not subject to reformation, Allstate cannot be liable for breach of that contract. *See Brennan v. Farmers Alliance Mutual Insurance Co.*, 961 P.2d 550, 556 (Colo.App. 1998).

 Plaintiffs' fourth, fifth, and sixth claims for relief seek damages based on the policy's failure to include extended lost wage benefits "without dollar or time limitations" as required by § 10–4–710(2)(a)(II), C.R.S. I cannot agree with plaintiffs that this section, although separate from the minimum lost wage coverage required by section 10–4–706(1)(d)(I), must be read in isolation from that provision. *See People v. District Court, Second Judicial District*, 713 P.2d 918, 921–22 (Colo. 1986) (court must attempt to harmonize, insofar as is possible, all parts of a statute). It is instead an extension of those minimum benefits. *See* § 10–4–710(2)(a)(II) (referring to "[c]ompensation of all expenses *of the type described in section 10–4–706(1)(b)* ") (emphasis added). The enhanced optional coverage contemplated by section 10–4–710(2)(a) provides for lost wages without limitation as to the length of time such benefits may be recovered or the total amount recoverable.

Nevertheless, it continues to refer, as does section 10–4–706(1)(d)(I), to the recovery of such benefits by an "injured person." I must presume that the Colorado state legislature intended the definition of "injured person" to remain consistent between these two closely related provisions. *See Sorenson v. Secretary of the Treasury of the United States*, 475 U.S. 851, 860, 106 S.Ct. 1600, 1606, 89 L.Ed.2d 855 (1986). Because section 10–4–706(1)(d)(II) requires an injured person to be living to be entitled to minimum wage loss benefits, I conclude that the extension of those benefits contemplated by the section 10–4–710(2)(a) does not include lost wages extending past the death of the injured person. For this reason, the policy need not be reformed to provide, nor can Allstate be liable for breach of contract or bad faith for failure to provide, such benefits. *Brennan*, 961 P.2d at 556.

**THEREFORE, IT IS ORDERED** as follows:

(1) That Plaintiffs' Motion Pursuant to 28 U.S.C. § 1447(c) for Remand to State Court [# 18], filed May 28, 2004, is **DENIED**;

(2) That Defendants Allstate Insurance Company and Liz Marchand's Amended Motion to Dismiss Plaintiffs' First Amended Complaint [# 49], filed October 4, 2004, is **GRANTED**;

(3) That plaintiffs' claims against Marchand are **DISMISSED, WITH PREJUDICE**;

(4) That Marchand is **DROPPED** as a party from this case, and the case caption amended accordingly;

(5) That the first, second, third, fourth, fifth, and sixth claims for relief of the First Amended Complaint asserted by Scott Hill in his individual capacity against Allstate Insurance Company are **DISMISSED WITH PREJUDICE**; and

(6) That the first, second, third, fourth, fifth, and sixth claims for relief of the First Amended Complaint asserted by Scott Hill in his capacity as personal representative of the estate of April Hill against Allstate Insurance Company are **DISMISSED WITH PREJUDICE**.